# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-02100-SCT

*WILLIAM CHRISTOPHER TUCKER*

*v.*

*GAY ST. MARY WILLIAMS AND LARRY WILLIAMS*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/22/2013 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| TRIAL COURT ATTORNEYS: | TOBY JUSTIN GAMMILL |
| | WHITNEY GLADDEN |
| | JACOB DANE KING |
| | CHUCK McRAE |
| COURT FROM WHICH APPEALED: | CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY |
| ATTORNEYS FOR APPELLANT: | MICHAEL ANDREW RUEFF |
| | TOBY JUSTIN GAMMILL |
| | JACOB DANE KING |
| ATTORNEYS FOR APPELLEES: | SETH CLAYTON LITTLE |
| | CHUCK McRAE |
| | CHRISTOPHER ANTHONY BAMBACH |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 08/04/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., KITCHENS AND COLEMAN, JJ.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1. Gay St. Mary Williams and her husband, Larry Williams, filed a complaint against William Christopher Tucker and two insurance companies in the Circuit Court of Hinds County, First Judicial District. The Williamses alleged that Gay St. Mary Williams had been severely injured in a motor vehicle accident caused by Tucker. When Tucker failed to

answer, the circuit clerk entered a default. The trial court denied Tucker's motion to set aside the entry of default and his motion for reconsideration. After a hearing, the trial court awarded damages in the amount of $2,962,984.60, plus $300,000 to Larry Williams for loss of consortium, and entered a default judgment in favor of the Williamses.

¶2. Tucker appeals, arguing that the trial court's refusal to set aside the entry of default was an abuse of discretion. Alternatively, he challenges portions of the damages award. This Court finds that, under Mississippi's liberal standard applicable to setting aside entries of default, which requires a default entry to be set aside in the interests of justice, the trial court abused its discretion by refusing to set aside the entry of default in this case. Therefore, we reverse the judgment of the circuit court and remand this case for further proceedings.

**FACTS**

¶3. On February 4, 2010, Kentucky residents Gay St. Mary Williams and Larry Williams filed a complaint against Tucker, Zurich North American Insurance Company (Zurich), Shelter Insurance Company (Shelter), and John Does 1-5.[1] A "corrected" complaint, filed four days later, alleged that, on or about February 9, 2007, Gay St. Mary Williams was driving a rental car in the left-turn lane of North State Street in Jackson, Mississippi, facing north and preparing to turn left onto Beasley Road. As Gay St. Mary Williams was turning left across the southbound lane, her vehicle was struck by the vehicle of Tucker, who was driving south on North State Street. The Williamses alleged that Tucker recklessly and negligently had failed to keep a proper lookout and that she had failed to yield to oncoming

_____

[1] The Williamses alleged in the complaint that insurance policies from Zurich and Shelter provided insurance coverage for the accident.

traffic. The Williamses also averred that, due to Tucker's careless, negligent, and reckless acts, Gay St. Mary Williams suffered multiple facial and back fractures and facial lacerations, and that she experiences permanent, constant pain and suffering and emotional distress. The Williamses claimed damages for Gay St. Mary Williams's physical pain, mental anguish and loss of enjoyment of life, medical expenses, lost employment, and lost wages. Larry Williams asserted a loss of consortium claim.

¶4.     Zurich and Shelter filed answers to the complaint. On June 28, 2010, the court ordered that Zurich be dismissed and that Maryland Casualty Company (Maryland) be substituted as a party defendant. Maryland filed an answer and later moved for summary judgment. Shelter also moved for summary judgment. On July 27, 2011, the Williamses filed a motion for additional time to respond to Shelter's motion for summary judgment. *See* M.R.C.P. 56(f).

¶5.     On June 15, 2010, more than four months after filing the complaint, the Williamses filed an application for entry of default against Tucker for "failure to plead, answer, or otherwise defend." *See* M.R.C.P. 55(a).[2] The clerk entered default against Tucker on the

---

[2] Rule 55(a)-(c), which is central to this appeal, provides:

**(a) Entry.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default.

**(b) Judgment.** In all cases the party entitled to a judgment by default shall apply to the court therefor. If the party against whom judgment by default is sought has appeared in the action, he (or if appearing by representative, his representative) shall be served with written notice of the application for judgment at least three days prior to the hearing of such application; however, judgment by default may be entered by the court on the day the case is set for trial without such three days' notice. If in order to enable the court to enter

3

same day. Then, also on the same day, the Williamses filed a motion for a default judgment. *See* M.R.C.P. 55(b). On October 22, 2010, the Williamses filed an application for a default judgment on the issues of liability and damages.

¶6.     Tucker filed a motion to set aside the entry of default dated November 5, 2010.[3] In the motion, Tucker stated that his "insurance carrier was notified of the entry of default via property damage arbitration." Tucker argued that he had a meritorious defense to the civil action, that the defendants had not been prejudiced by the delay, and that the default should be set aside for good cause or in the interests of justice. Tucker attached his answer to the motion.

¶7.     A hearing occurred on the motion on January 24, 2011. During the hearing, Tucker's counsel argued that the default entry should be set aside because Tucker had strong defenses to the Williamses' action. When the trial court asked "what's a good cause, what's your explanation for the default entered," Tucker's counsel responded that he had no information about why Tucker had not given the complaint to his insurer. He also stated that the insurer

judgment or to carry it into effect it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearing with or without a jury, in the court's discretion, or order such references as it deems necessary and proper.

**(c) Setting Aside Default.** For good cause shown, the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

M.R.C.P. 55.

[3] No docket entry reflects the filing of Tucker's motion to set aside the clerk's entry of default. The trial court ruled on the motion on July 1, 2011.

had filed an answer immediately upon receiving notice of the lawsuit. On July 1, 2011, the trial court denied the motion to set aside the entry of default.

¶8. On July 26, 2011, Tucker filed a motion for reconsideration. Again, Tucker argued that he had colorable defenses to the Williamses' claims and that the Williamses had suffered no prejudice. Tucker averred that, in 2007, he had sued Gay St. Mary Williams in the United States District Court for the Southern District of Mississippi for damages incurred in the same accident that is the subject of the Williamses' present lawsuit. Tucker attached the October 31, 2008, settlement agreement showing that Gay St. Mary Williams had settled the lawsuit with Tucker for $400,000.[4] Tucker also attached an accident reconstruction report he had obtained for the district court litigation that concluded that Gay St. Mary Williams had been at fault in the accident. He also attached his own affidavit stating that the reason he had failed to send the complaint to his insurer was that he had thought it was a request for his statement in Williams's suit against her insurer, and he did not realize he also was a defendant in that lawsuit. Tucker argued that the trial court should set aside the entry of default due to his colorable defenses and the lack of prejudice to the Williamses.[5]

¶9. At the hearing on October 24, 2011, Tucker argued that the default entry should be set aside due to his allegations of colorable defenses and his contention with regard to lack

---

[4] After the settlement, on January 12, 2009, the district court dismissed the case with prejudice, finding that "it appear[s] that this entire cause has been compromised and settled as between and among the parties."

[5] The Williamses moved to strike the exhibits that Tucker had filed with the motion for reconsideration, but the trial court never ruled on that motion. Thus, the exhibits were before the trial court when it denied the motion for reconsideration.

of prejudice. He raised the colorable defenses of the accident reconstruction report and that the Williamses' lawsuit was barred because Gay St. Mary Williams should have raised any claims arising out of the accident as compulsory counterclaims in the district court litigation. The Williamses argued that the default entry should stand because Tucker had provided no reason for his failure to answer. The trial court asked Tucker's counsel about the reason for the default, and when counsel was unable to provide the reason Tucker had not timely filed an answer, the trial court responded, "That's all I need." On November 10, 2011, the trial court denied the motion for reconsideration, because "inasmuch as the Defendant has given no reason for the failure to timely respond to the complaint, good cause does not exist to lift the Clerk's entry of default."

¶10.    On June 14, 2013, the trial court held an evidentiary hearing on damages. Before the Williamses presented any evidence, Tucker again challenged the default entry, and the trial court again denied relief. The Williamses presented evidence consisting of Larry Williams's testimony, depositions of Gay St. Mary Williams's treating physicians, and medical records and medical bills. The trial court awarded noneconomic damages of $1,000,000, which were included in a total award of $2,962,984.60. In addition, the trial court awarded Larry Williams $300,000 on his loss of consortium claim. On November 22, 2013, finding no just reason for delay, the trial court directed the entry of a Rule 54(b) final judgment in these amounts against Tucker, with six percent interest to run from the date of judgment. *See* M.R.C.P. 54(b).

6

¶11.    Tucker appeals, arguing that the default judgment should be reversed because the trial court's failure to set aside the entry of default was an abuse of discretion. He also argues that the trial court erroneously considered certain evidence submitted at the damages hearing, and that the damages award was not supported by substantial evidence. The Williamses argue that appellate review of the entry of default is procedurally barred and that other procedural defects prevent this Court's review of this appeal. Alternatively, the Williamses contend that the trial court's refusal to set aside the default entry was not an abuse of discretion, and that substantial admissible evidence supported the damages award. Because we reverse the default judgment, we do not address Tucker's alternative argument on damages.

**DISCUSSION**

I.    WHETHER APPELLATE REVIEW OF THE ENTRY OF DEFAULT IS PROCEDURALLY BARRED.

¶12.    Rule 4(a) of the Rules of Appellate Procedure provides that a notice of appeal must be filed "within thirty days after the date of entry of the judgment or order appealed from." M.R.A.P. 4(a). Under the final judgment rule, "[g]enerally, only final judgments are appealable." *M.W.F. v. D.D.F.*, 926 So. 2d 897, 899 (Miss. 2006) (citing M.R.A.P. 5). The Williamses contend that, because Tucker did not file a notice of appeal within thirty days after the date the trial court denied his motion for reconsideration, he is barred from challenging the trial court's refusal to set aside the clerk's entry of default. This argument turns on whether the denial of the motion for reconsideration was a final judgment from which an appeal could have been taken.

7

¶13. The trial court denied Tucker's motion to set aside the default entry on July 1, 2011. On July 26, 2011, Tucker filed his motion for reconsideration of that order, citing Rule 60(b), which provides that, on motion, the court may relieve a party of a "final judgment, order, or proceeding." M.R.C.P. 60(b). The Williamses argue that, because this Court has held that an order denying a Rule 60(b) motion to reconsider "is a final judgment for purposes of appeal," *Pruett v. Malone*, 767 So. 2d 983, 985 (Miss. 2000), Tucker had to perfect his appeal within thirty days after the trial court denied the motion for reconsideration. The Williamses argue that, because Tucker failed to perfect his appeal in a timely manner, he cannot seek appellate relief from the trial court's refusal to set aside the clerk's entry of default.

¶14. In response, Tucker correctly argues that the order denying the motion for reconsideration was an interlocutory order from which no appeal was available. A clerk's entry of default is an "interlocutory step that is taken under Rule 55(a) in anticipation of a final judgment by default under Rule 55(b)." 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2692 (3d ed. 1998). Likewise, the order denying Tucker's motion to set aside the default entry was an interlocutory order, not a final, appealable judgment. And although Tucker invoked Rule 60(b) in his motion for reconsideration of that order, the order denying reconsideration also was an interlocutory order.

¶15. We observe that Tucker's reliance on Rule 60(b) in his motion for reconsideration was incorrect. Rule 60(b) provides a method for obtaining relief from a "final judgment, order, or proceeding." M.R.C.P. 60(b). The trial court has the authority to grant relief from an interlocutory order under Rule 54(b), which provides that:

8

any order or other form of decision, however designated which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all of the parties shall not terminate the action as to any of the claims or parties and the order or other form of decision *is subject to revision at any time* before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

M.R.C.P. 54(b) (emphasis added); ***Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.***, 460 U.S. 1, 12, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); 18B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4478.1 (2d ed. 2002).

¶16.    Tucker's mistaken citation to Rule 60(b) instead of Rule 54(b) in his motion for reconsideration is immaterial to our resolution of this issue. The trial court's authority to reconsider its order derived from Rule 54(b), and the order denying the motion for reconsideration was an interlocutory order from which no appeal was available. After the trial court had entered the default judgment, Tucker timely filed his notice of appeal from the trial court's subsequent entry of a Rule 54(b) final judgment respecting fewer than all of the claims and fewer than all of the parties. M.R.C.P. 54(b). Tucker's appeal properly is before this Court.

II.    WHETHER OTHER PROCEDURAL DEFECTS PREVENT APPELLATE REVIEW.

¶17.    The Williamses argue that Tucker waived his argument that the default judgment should be reversed by failing to identify that argument in the statement of issues. Mississippi Rule of Appellate Procedure 28(a)(3) sets out the following requirement for an appellant's brief:

**Statement of Issues.** A statement shall identify the issues presented for review. No separate assignment of errors shall be filed. Each issue presented

9

for review shall be separately numbered in the statement. No issue not distinctly identified shall be argued by counsel, except upon request of the court, but the court may, at its option, notice a plain error not identified or distinctly specified.

M.R.A.P. 28(a)(3). Tucker set forth two issues in his statement of the issues: "A. THE TRIAL COURT ERRED IN FAILING TO SET ASIDE THE CLERK'S ENTRY OF DEFAULT ENTERED AGAINST TUCKER" and "B. THE TRIAL COURT ERRED IN CONSIDERING THE EVIDENCE AND TESTIMONY IN THE DAMAGES HEARING." In the body of his argument on the first issue, Tucker makes assertions applicable both to the clerk's entry of default and to the default judgment.

¶18. We find that Tucker's argument that the default judgment should be reversed is properly before the Court. Because the clerk's entry of default is a prerequisite to a default judgment, an appellate finding that the trial court should have granted a motion to set aside the clerk's entry of default means that the default judgment also must be reversed. *See Allstate Ins. Co. v. Green*, 794 So. 2d 170, 174 (Miss. 2001). Therefore, Tucker's statement of the issues in which he challenged the entry of default also was a sufficient challenge to the default judgment.

¶19. The Williamses also contend that Tucker was unable to use Rule 60(b) as an avenue for relief because no exceptional and compelling circumstances existed. *See Pruett*, 767 So. 2d at 986 (stating that "[r]elief pursuant to Rule 60(b)(6) is reserved for 'exceptional and compelling circumstances'"). They argue that "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Point S. Land Trust v. Gutierrez*, 997 So. 2d 967, 975 (Miss. Ct. App. 2008). But, as established above, because no final

judgment had been entered, Rule 54(b), not Rule 60(b), provided the mechanism for the trial court to rule on Tucker's motion for reconsideration. Thus, the finality considerations attendant to Rule 60(b) were not present.

¶20. Finally, the Williamses argue that Tucker cannot rely in this appeal on the attachments to his motion for reconsideration. They contend that a motion for reconsideration cannot be used to raise arguments that should have been raised in the prior proceedings. *See Gutierrez*, 907 So. 2d at 976. With this argument, the Williamses in effect reiterate their motion to strike the attachments from Tucker's motion for reconsideration. Because the trial court never ruled on the motion to strike, the attachments were before that court when it ruled on the motion for reconsideration. And, because the Williamses never secured a ruling from the trial court on the motion to strike, they have waived consideration of this issue on appeal. "'[T]he affirmative duty rests upon the party filing the motion to follow up his action by bringing it to the attention of the trial court.' A motion that is not ruled upon is presumed abandoned." *Cossitt v. Alfa Ins. Corp.*, 726 So. 2d 132, 135 (Miss. 1998) (citation omitted).

### III. WHETHER THE DEFAULT JUDGMENT SHOULD BE REVERSED BECAUSE THE TRIAL COURT'S REFUSAL TO SET ASIDE THE ENTRY OF DEFAULT WAS AN ABUSE OF DISCRETION.

¶21. Tucker argues that the trial court's refusal to set aside the clerk's entry of default was an abuse of its discretion. We emphasize that Tucker challenges the entry of default. But, because the standards for setting aside an entry of default under Rule 55(c) and setting aside a default judgment under Rule 60(b) are interrelated, we address the standards attendant to both rules.

11

¶22. Under Rule 55(c), the trial court may set aside an entry of default "for good cause shown." M.R.C.P. 55(c). But when a default judgment has been entered, a party must seek relief under Rule 60(b) by filing a motion to set aside the default judgment. M.R.C.P. 55(c) (stating that, "if a judgment by default has been entered, [the court] may likewise set it aside in accordance with Rule 60(b)"). Under Rule 60(b), the trial court may relieve a party of a final judgment for the following reasons:

(1) fraud, misrepresentation, or other misconduct of an adverse party;

(2) accident or mistake;

(3) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application;

(6) any other reason justifying relief from the judgment.

M.R.C.P. 60(b).

¶23. When ruling on a Rule 60(b) motion to set aside a default judgment, the trial court must consider a three-part balancing test. *BB Buggies, Inc. v. Leon*, 150 So. 3d 90, 101 (Miss. 2014). The trial court must determine (1) "the nature and legitimacy of the defendant's reasons for his default, i.e., whether the defendant has good cause for default," (2) "whether the defendant in fact has a colorable defense to the merits of the claim," and (3) "the nature and extent of prejudice which may be suffered by the plaintiff if the default judgment is set

12

aside." ***BB Buggies***, 150 So. 3d at 101 (quoting ***Am. States Ins. Co. v. Rogillio***, 10 So. 3d 463, 468 (Miss. 2009)).

¶24.    "[A]n application for vacation of [a default] judgment is addressed to the sound discretion of the trial court." ***Guaranty Nat'l Ins. Co. v. Pittman***, 501 So. 2d 377, 388 (Miss. 1987). The trial court should exercise its discretion within the strictures of Rules 55(c) and 60(b), along with the criteria set forth by this Court. ***Id.*** This Court reviews the trial court's grant or denial of a motion to set aside an entry of default or a default judgment for abuse of discretion. ***Tatum v. Barrantine***, 797 So. 2d 223, 227 (Miss. 2001). But if the trial court's decision was based on an error of law, then we will reverse. ***Green***, 794 So. 2d at 173.

¶25.    This Court has held that trial courts should not be grudging about setting aside a default judgment when a proper showing has been made. ***Id.*** at 387-88. Because the law does not favor default judgments, "where there is a reasonable doubt as to whether or not a default judgment should be vacated, doubt should be resolved in favor of opening the judgment and hearing the case on its merits." ***Rogillio***, 10 So. 3d at 467 (quoting ***McCain v. Dauzat***, 791 So. 2d 839, 843 (Miss. 2001)). And, due to the importance of affording litigants a trial on the merits, "any error made by a trial judge should be in the direction of setting aside a default judgment and proceeding with trial." ***Green***, 794 So. 2d at 174. However, "it does not follow that a party seeking relief from a default judgment is entitled to that relief as a matter of right." ***Rogillio***, 10 So. 3d at 467 (quoting ***Pointer v. Huffman***, 509 So. 2d 870, 875 (Miss. 1987)).

13

¶26. We have recognized an important distinction between the standard for setting aside

an entry of default and the standard for setting aside a default judgment, stating:

> M.R.C.P. 55(c) draws a clear distinction between setting aside an entry of
> default and setting aside a judgment of default. This Court has previously held
> "there is a more liberal standard for setting aside a default than the standard for
> setting aside a default judgment." *King v. Sigrest*, 641 So. 2d 1158, 1162
> (Miss. 1994). Therefore, in accordance with M.R.C.P. 55(c) the trial court [is]
> permitted to set aside the entry of default for good cause shown. *See Tatum* [*v.
> Barrentine*], 797 So. 2d [223,] 226 [Miss. 2001].
>
> "'[G]ood cause shown' . . . requires the moving party to provide an
> explanation for the default or give reasons why vacation of the default entry
> would serve the interests of justice." *Allstate Ins. Co. v. Green*, 794 So. 2d
> 170, 179 (Miss. 2001) (Waller, J., concurring) (citing 10A Charles Alan
> Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*
> § 2696 at 141-42; 143-49 (3d ed.1998) (footnotes omitted)).

*Windmon v. Marshall*, 926 So. 2d 867, 871 (Miss. 2006).

¶27. "Any of the reasons sufficient to justify the vacation of a default judgment under Rule

60(b) normally will justify relief from a default entry and in various situations a default entry

may be set aside for reasons that would not be enough to open a default judgment . . . ."

*Green*, 794 So. 2d at 179 (Waller, J., concurring (quoting 10A Charles Alan Wright, Arthur

R. Miller, *Federal Practice and Procedure* §2696 (3d ed. 1998)). Thus, when considering

whether the trial court abused its discretion by failing to set aside an entry of default, the

Court considers the nature and legitimacy of the explanation for the default, whether there

is a colorable defense to the claim, and the extent of prejudice to the plaintiff if the default

is set aside. *King v. Sigrest*, 641 So. 2d 1158, 1162 (Miss. 1994) (quoting *Williams v.

Kilgore*, 618 So. 2d 51, 55 (Miss.1992)). When reviewing the trial court's refusal to set aside

an entry of default, the Court applies a more liberal standard to its consideration of these factors than it applies when reviewing a default judgment. **Windmon**, 926 So. 2d at 871.

¶28.    Tucker argues that the trial court abused its discretion by refusing to set aside the entry of default. As an initial matter, we observe that, after the default judgment was entered, Tucker did not file a Rule 60(b) motion to set aside the default judgment. Such a motion was not required, as Tucker preserved his challenge to the entry of default for appeal by filing a motion to set it aside. An order denying a motion to set aside a default, like any other interlocutory order, may be reviewed on appeal from a final judgment. **Madsen v. Bumb**, 419 F.2d 4, 5-6 (9th Cir. 1969). Because the entry of default is a prerequisite to the trial court's ability to enter a default judgment, an appellate finding that an entry of default should have been set aside means that the defendant is entitled to relief from the default judgment. *See* **Green**, 794 So. 2d at 174 (holding that, in an appeal from a default judgment, the circuit court's error in refusing to set aside the entry of default entitled the defendant to relief from the default judgment).

¶29.    We turn to the trial court's finding that Tucker had failed to show good cause to set aside the entry of default. As discussed above, Rule 55(c) provides that an entry of default may be set aside "[f]or good cause shown." M.R.C.P. 55(c). "Good cause" has been defined as a *bona fide* excuse for failing to answer in a timely manner. **Pittman**, 501 So. 2d at 388. The Williamses argue that, without a *bona fide* excuse for the failure to respond to the complaint, a defaulting party is entitled to no relief from an entry of default. As discussed above, this Court has not interpreted the "good cause" requirement of Rule 55(c) so

15

narrowly. Rather, we have held that a default entry may be vacated for good cause or in the interests of justice, and that the same three factors considered under Rule 60(b) are relevant to a consideration of whether to set aside an entry of default. *Windmon*, 926 So. 2d at 871; *King*, 641 So. 2d at 1162. In *Green*, the Court held that an entry of default should have been set aside due to the existence of a colorable defense even though the defendant failed to present a persuasive reason for its failure to answer. *Green*, 794 So. 2d at 174. In fact, it would be senseless to require a defaulting party to provide an excuse for the default to justify setting aside an entry of default, but to require no such excuse under the higher standard for setting aside a default judgment, in which a defaulting party may prevail upon a strong showing of a colorable defense and lack of prejudice. *See*, *e.g.*, *Woodruff v. Thames*, 143 So. 3d 546, 556 (Miss. 2014) (reversing a default judgment where the colorable defense and prejudice factors favored the defaulting party, although that party had provided no persuasive excuse for the default). We proceed to review the trial court's findings under the three relevant factors.

*A. Nature and Legitimacy of the Defendant's Reasons for the Default*

¶30.    Tucker argues that, because his federal lawsuit against Gay St. Mary Williams had been settled, when he received the Williamses' complaint in the present case, he did not realize he had been sued and, for that reason, he did not forward the "paperwork" to his insurer. He argues that his confusion should have excused the default. At the hearings on the motion to set aside the entry of default and the motion for reconsideration, Tucker's counsel provided no explanation for Tucker's failure to respond. Instead, Tucker argued that the entry

16

of default should be set aside because he had colorable defenses to the Williamses' action and because the Williamses would not experience prejudice if the default entry were set aside. Tucker did present an affidavit to the trial court attached to his motion for reconsideration stating the following:

> On February 12, 2011[,] I received paperwork from the office of Chuck McRae.
>
> Upon seeing the paperwork, I understood it to be a request for my statement because Ms. Williams was suing her insurer.
>
> I called my insurance agent, Janet Howell, and informed her that Mr. McRae's office had contacted me. She said she would contact Mr. McRae regarding the matter. I did not send the paperwork to my agent.
>
> At the time the paperwork was delivered to me, I was not aware that I was a defendant in the present lawsuit.

¶31. On appeal, Tucker contends that, because he settled his lawsuit with Gay St. Mary Williams, he was justified in believing that his dispute with her was "over for good," leading to his misapprehension of the import of the summons and complaint. He cites *Pittman*, in which the Court found that the defendant's failure to answer was not justified by his confusion over whether or not he had insurance. *Pittman*, 501 So. 2d at 388. Tucker points to language in *Pittman* stating that, if the defendant had been confused over "the meaning and effect of the papers served upon him" or confused about "the fact that he had been sued and should respond," those circumstances could support a finding of good cause for the failure to respond. This Court also indicated in *Rogillio* that a defendant's claim that he "did not recognize or understand the import of a summons and complaint" may constitute good cause. *Rogillio*, 10 So. 3d at 469.

17

¶32. Because Tucker failed to present these arguments to the trial court, the trial court did not abuse its discretion by finding that he had failed to provide an excuse for the default. That Tucker was confused about the import of the summons and complaint due to the settlement of the prior federal lawsuit was not apparent from the averments in his affidavit. Tucker did not mention the federal lawsuit in his affidavit. When the trial court asked Tucker's counsel at the hearings about his client's explanation for his failure to answer, counsel responded that there was no explanation. Instead, counsel asserted that Tucker's colorable defenses and the lack of prejudice to the Williamses justified setting aside the default entry. Under these circumstances, even under this Court's liberal standard applicable to setting aside an entry of default, the trial court did not abuse its discretion by rejecting Tucker's reason for the default.

### B. Colorable Defenses

¶33. A review of Tucker's motions, the hearing transcripts, and the trial court's orders in this case indicates that the trial court did not consider Tucker's arguments on colorable defense and prejudice. Instead, when Tucker offered no excuse for the default, the trial court deemed that sufficient for its denial of relief from the default entry. This Court has established that the existence of a colorable defense and the degree of prejudice to the opposing party are relevant considerations when a trial court is addressing a motion to set aside an entry of default. *King*, 641 So. 2d at 1162. Therefore, the trial court erred by failing to consider Tucker's showing of colorable defenses. Although the record establishes that the trial court erroneously failed to consider this factor, we find that it clearly weighed in favor

18

of Tucker. *See* **Woodruff**, 143 So. 3d at 556 (although the trial court erred by failing to consider prejudice, the Court weighed the prejudice prong and concluded that it favored setting aside a default judgment).

¶34. "The second prong of the balancing test asks whether the defendant has a colorable defense to the merits of the plaintiff's claim." **Rogillio**, 10 So. 3d at 469. This Court has stated that "[i]f any one of the three factors in the balancing test outweighs the other in importance, this is the one." *Id.* (quoting **Bailey v. Georgia Cotton Goods Co.**, 543 So. 2d 180, 182 (Miss. 1989)). The Court has "encouraged our trial courts to vacate default judgments where the defendant has shown that he has a meritorious defense on the merits." **Bailey**, 543 So. 2d at 182.

¶35. "'Colorable' is defined as '*appearing* to be true, valid, or right'" **Woodruff**, 143 So. 3d at 553 (quoting *Black's Law Dictionary* 282 (8th ed. 2004) (emphasis added)). A colorable defense is one that reasonably may be asserted, given the facts of the case and the current law. **Woodruff**, 143 So. 3d at 553. A defense need not be compelling, be proven to trial standards, or be supported by sworn evidence in order to qualify as a "colorable defense." *Id.* Rather, the defense must be a reasonable one. *Id.* "Indeed, this Court has held that even a defense of 'questionable' strength may be colorable." *Id.* (citing **Rogillio**, 10 So. 3d at 471).

¶36. Tucker argues that he presented two colorable defenses: (1) that the Williamses' action against Tucker is barred by *res judicata*, because Gay St. Mary Williams's claims were compulsory counterclaims that she had not raised in Tucker's federal lawsuit against her, and

19

(2) the accident reconstruction report produced in the federal action and submitted to the trial court in this action established that Williams was wholly at fault in the accident.

¶37.    We begin with Tucker's *res judicata*/compulsory counterclaim defense to determine whether it was one that reasonably could be asserted, keeping in mind that even a defense of questionable strength may be colorable. The question of whether a claim was required to be raised as a compulsory counterclaim in a case pending in federal court is governed by Federal Rule of Civil Procedure 13(a). ***Tyler Marine Servs., Inc. v. Aqua Yacht Harbor Corp.***, 920 So. 2d 493, 496 (Miss. Ct. App. 2006). Federal Rule of Civil Procedure 13(a) provides:

> **(a) Compulsory Counterclaim.**
>
> **(1) In General.** A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim:
>
> **(A)** arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
>
> **(B)** does not require adding another party over whom the court cannot acquire jurisdiction.
>
> **(2) Exceptions.** The pleader need not state the claim if:
>
> **(A)** when the action was commenced, the claim was the subject of another pending action; or
>
> **(B)** the opposing party sued on its claim by attachment or other process that did not establish personal jurisdiction over the pleader on that claim, and the pleader does not assert any counterclaim under this rule.

F.R.C.P. 13(a). Under both the Federal Rules of Civil Procedure and the Mississippi Rules of Civil Procedure, a compulsory counterclaim is "any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or

20

occurrence that is the subject matter of the opposing party's claim." ***Reid ex rel. Reid v. Am. Premier Ins. Co.***, 814 So. 2d 141, 146 (2002). "A counterclaim which is compulsory but is not brought is thereafter barred" by *res judicata*. ***McDaniel v. Anheuser-Busch, Inc.***, 987 F.2d 298, 304 (5th Cir. 1993) (quoting ***Baker v. Gold Seal Liquors, Inc.***, 417 U.S. 467, 469 n.1, 94 S. Ct. 2504, 2506 41 L. Ed. 2d 243 (1974)).

¶38.    Under the rules employed by the Fifth Circuit Court of Appeals for determining whether a counterclaim is compulsory, a court should ask:

> (1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether res judicata would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; and (4) whether there is any logical relationship between the claim and the counterclaim.

***Tank Insulation Int'l, Inc. v. Insultherm, Inc.***, 104 F.3d 83, 85-86 (5th Cir. 1997). If any one of these tests is satisfied, the counterclaim is compulsory. ***Id.*** It is easy to deduce that the Williamses' claims against Tucker arise from the same transaction or occurrence as Tucker's federal court lawsuit against Gay St. Mary Williams. Both cases are based on the same accident, and the same evidence would be relevant to both lawsuits. Because both lawsuits require a determination of which party was at fault for the accident, the issues of fact and law are largely the same. An undeniable logical relationship exists between the claims in question. A logical relationship "exists when the claim and the counterclaim arise from the same 'aggregate of operative facts,' or 'the aggregate core of facts upon which the original claim rests activates additional rights, otherwise dormant, in the defendants.'" ***N. Cypress Med. Ctr. Operating Co. Ltd. v. Cigna Healthcare***, 781 F.3d 182, 205 n.145 (5th Cir. 2015).

¶39. The Williamses argue that, even if their claims were compulsory counterclaims that should have been raised in the federal case, the settlement of the federal case had no *res judicata* effect upon the claims because the settlement was not intended to preclude Gay St. Mary Williams's claims against Tucker. *Res judicata* bars claims that were raised or should have been decided in the prior litigation. ***Reid***, 814 So. 2d at 145. The elements of *res judicata* are: (1) "identity of the subject matter of the original action when compared with the action now sought to be precluded;" (2) "identity of underlying facts and circumstances upon which a claim is asserted and relief sought in the two actions;" (3) "identity of the parties to the two actions, an identity met where a party to the one action was in privity with a party to the other;" and (4) "identity of the quality or character of a person against whom the claim is made." ***Id.*** (citing ***Dunaway v. W.H. Hopper & Assocs., Inc.***, 422 So. 2d 749, 751 (Miss. 1982)). *Res judicata* requires an express or implied adjudication on the merits. ***Liberto v. D.F. Stauffer Biscuit Co., Inc.***, 441 F.3d 318, 328 (5th Cir. 2006).

¶40. The district court dismissed Tucker's lawsuit with prejudice, "it appearing that the entire cause has been compromised and settled between and among the parties." It is true that "there are circumstances where 'a settlement agreement approved and embodied in a final judgment of the court is entitled to full res judicata effect.'" ***Id.*** at 326. When the parties to the settlement "objectively manifest an intent to cement their agreement with claim preclusion," then a settlement agreement will be given *res judicata* effect. ***Id.***

¶41. The settlement agreement in the Williamses' federal lawsuit states the following regarding the *res judicata* effect of the settlement:

IT IS EXPRESSLY UNDERSTOOD, PROMISED, AGREED AND COVENANTED by the undersigned that the payment aforesaid made by Gay St. Mary Williams' insurance carrier on her behalf is not intended to be and should not be construed as an admission of any liability for the matters claimed, but that the said payment is made by way of compromise and settlement only of certain Claims mentioned above, for which liability is expressly denied by the aforementioned Payors and released parties and that this release is intended only to operate as a release of whatever Claims the undersigned may have against Payors. Any claims or causes of action by Gay St. Mary Williams are specifically reserved and not waived.

The Williamses argue that, because the settlement agreement specifically reserved "any claims or causes of action by Gay St. Mary Williams," the district court's judgment of dismissal with prejudice had no *res judicata* effect on the Williamses' claims. *See Matter of W. Texas Mktg. Corp.*, 12 F.3d 497, 501 (5th Cir. 1994) (stating that "'[e]xpress agreement' between the parties that litigation of one part of a claim will not preclude a second suit on another part of the same claim is normally honored by the courts").

¶42.    But persuasive authority is to the effect that, because the district court's judgment did not expressly incorporate the settlement agreement, that agreement was not "embodied in a final judgment of the court," and its language has no effect on *res judicata* analysis. *See Oreck, LLC v. Dyson, Inc.*, 560 F.3d 398, 402 (5th Cir. 2009). In *Oreck*, the Fifth Circuit Court of Appeals examined the preclusive effect of a district court judgment entered after a case had settled. *Id.* at 400. As in this case, the final judgment simply dismissed the case without prejudice and did not incorporate the settlement agreement. *Id.* Because the settlement agreement was not incorporated into the judgment, the Fifth Circuit concluded that the intent the parties had expressed in the settlement agreement as to claim preclusive effect of the settlement did not control the *res judicata* analysis. *Id.* at 402. Thus, the Fifth Circuit

23

held that, instead of looking to the parties' agreement as to which future claims would be barred by the settlement, the district court properly resolved that question by applying the transaction test. *Id.* at 403. In this case, because the Williamses' claims likely were compulsory counterclaims in the prior federal lawsuit and the settlement agreement was not incorporated into the district court's judgment of dismissal with prejudice, Tucker has presented a reasonable, colorable defense on the merits that the Williamses' lawsuit was barred by *res judicata*. While we do not now pass upon the ultimate efficacy of Tucker's *res judicata* defense, it is, nevertheless – at this stage – colorable.

¶43.    Tucker argues that a second colorable defense was established by the accident reconstruction report, produced in the federal court action, which opined that Williams was wholly at fault for the accident. The Williamses's claims against Tucker all were based on the theory that Tucker's negligence had caused the accident in which Gay St. Mary Williams had been injured. The Williamses were required to prove, by a preponderance of the evidence, the elements of duty, breach, causation, and injury. *Gulledge v. Shaw*, 880 So. 2d 288, 293 (Miss. 2004). In other words, the Williamses were required to show it was more probable than not that Tucker had breached his duty of reasonable care, which proximately had caused the accident and Gay St. Mary Williams's injuries. The accident reconstruction report to the effect that Gay St. Mary Williams, not Tucker, was wholly at fault for the accident tended to negate the elements of breach and causation. We find that the accident reconstruction report is sufficient to establish that Tucker has a second colorable defense to the Williamses' claims.

¶44. The Williamses argue that, because the accident reconstruction report was not sworn, it cannot be used to substantiate Tucker's defense. In *Capital One Services, Inc. v. Rawls*, 904 So. 2d 1010, 1016 (Miss. 2004), and *Rush v. North American Van Lines, Inc.*, 608 So. 2d 1205, 1210 (Miss. 1992), this Court held that an affidavit or other sworn evidence was required to show a colorable defense. However, these cases were overruled by *BB Buggies, Inc. v. Leon*, 150 So. 3d 90, 103 (Miss. 2014), which held that the strict requirement of sworn evidence applicable to summary judgment is not applicable to the more lenient standard for setting aside a default judgment. *Id.* Therefore, the accident reconstruction report was competent evidence in support of the existence of a colorable defense for the purpose of setting aside the entry of default.

¶45. We find that Tucker has presented two colorable defenses to the allegations in Williams's complaint.[6] First, Tucker has shown that the Williamses' action may be barred by *res judicata*. Second, Tucker has produced an accident reconstruction report to the effect that he was not negligent because Gay St. Mary Williams, not Tucker, was at fault for the accident. The colorable defense factor weighs in Tucker's favor.

*C. Extent of Prejudice to the Williamses if the Default is Set Aside*

¶46. Because this Court has established that the extent of prejudice to the opposing party is a relevant consideration when ruling on a motion to set aside an entry of default, the trial court erred by failing to consider Tucker's argument that the Williamses would suffer little

---

[6] Because the sole issue before this Court is whether the trial court abused its discretion by failing to set aside the entry of default, our review is limited to whether Tucker has presented colorable defenses on the merits. We do not adjudicate the merits of those defenses at this time.

prejudice if the default were set aside. ***King***, 641 So. 2d at 1162. "[T]he key inquiry in determining whether a plaintiff has suffered prejudice by the setting aside of the default judgment is the passage of time." ***Stanford v. Parker***, 822 So. 2d 886, 890 (Miss. 2002). This Court explicitly has recognized that delay may be substantially prejudicial in cases involving motor vehicle accidents due to the impact of the passage of time on "witnesses' memories regarding a split second event," and the fact that evidence may be lost over time. ***Pittman***, 501 So. 2d at 388. It also is a valid consideration that a severely injured plaintiff would suffer ongoing emotional and financial distress due to the delay in resolving the case. ***Rogillio***, 10 So. 3d at 472. However, the plaintiff's need to litigate the claims in the event a default judgment is set aside is not grounds for a finding of prejudice. ***BB Buggies***, 150 So. 3d at 104. "Prejudice does not result from 'the loss of rights that were obtainable only by default.'" ***Id.*** (quoting ***In re Estates of Gates***, 876 So. 2d 1059, 1065 (Miss. Ct. App. 2004)).

¶47.     The Williamses filed their circuit court complaint on February 4, 2010, and Tucker was served with process on March 3, 2010. Tucker's answer was due within thirty days but was not forthcoming. M.R.C.P. 12(a). On June 15, 2010, the Williamses filed their application for the entry of default, and the default was entered the same day. Tucker filed the motion to set aside, with his answer attached, dated November 5, 2010. Thus, Tucker did not file his answer until approximately seven months after it was due. The trial court denied the motion to set aside the default entry on July 1, 2011, and denied Tucker's motion for reconsideration on November 10, 2011.

26

¶48. The Williamses argue that they would suffer prejudice from setting aside the default due to their ongoing financial and emotional distress attributable to Gay St. Mary Williams's injuries. They also point to this Court's recognition that delay in a motor vehicle accident case may be prejudicial due to faded witness memories and lost evidence. Tucker responds that Gay St. Mary Williams's medical expenses were covered by worker's compensation, and she received an additional $500,000 from a workers' compensation settlement. Tucker also points out that the Williamses did not file their complaint until one day before the expiration of the three-year statute of limitations, and they did not move to set the damages hearing until March 28, 2013.

¶49. Because this Court is reviewing the propriety of the trial court's refusal to set aside the entry of default, we review the evidence and arguments concerning prejudice that were before the trial court at the time that it ruled on Tucker's motions. At that time, Tucker argued that the Williamses had not been prejudiced by his delayed answer because the Williamses still were litigating the case against the two insurers. As stated, Tucker's answer was filed seven months late. At that time, discovery was ongoing and no summary judgment motions had been filed. The trial court's rulings denying relief to Tucker were filed several months later.

¶50. In **BB Buggies**, this Court held that delays similar to those in this case were prejudicial under the stricter standard applicable to setting aside a default judgment, reasoning:

> Less than four months from commencement of the action to resolution on the
> motion to set aside the default judgment – with only eight days between entry

27

of the default judgment and the motion to set aside – is a very short amount of time compared to the time lapse in cases where we have found that the delay caused by the defendants was prejudicial to the plaintiffs. *See Kumar* [*v. Loper*], 80 So. 3d 808 [(Miss. 2012)] (complaint filed and served December 9, 2008; default judgment entered February 24, 2009; damages awarded June 11, 2009; and motion to set aside filed June 17, 2009, four months after default judgment was entered); *Rogillio*, 10 So. 3d 463 (more than a month elapsed from date default judgment entered until motion to set aside filed, and more than fourteen months elapsed from time complaint was filed and served until motion to set aside default judgment was denied); *Stanford v. Parker*, 822 So. 2d 886 (Miss. 2002) (fourteen months from time defendants were served until resolution on motion to set aside default judgment; motion to set aside filed nearly a year after default judgment entered); *Guar. Nat'l Ins. Co.* [*v. Pittman*], 501 So. 2d [371,] 377 [(Miss. 2010)] (motion to set aside filed four months after default judgment entered; motion to set aside denied thirteen months after complaint was filed and served).

*BB Buggies, Inc. v. Leon*, 150 So. 3d 90, 104-05 (Miss. 2014).

¶51. A more liberal standard is applicable to setting aside an entry of default. *Windmon*, 926 So. 2d at 871. Setting aside a default entry "requires the moving party to provide an explanation for the default or give reasons why vacation of the default entry would serve the interests of justice." *Id.* An entry of default may be set aside upon a showing of a colorable defense, without more. *Green*, 794 So. 2d at 174. Doubts should be resolved in favor of "opening the judgment and hearing the case on its merits." *Rogillio*, 10 So. 3d at 467 (quoting *McCain v. Dauzat*, 791 So. 2d 839, 843 (Miss. 2001)). We hold that, considering the liberal standard applicable to a motion to set aside an entry of default, the Williamses' presentation of two colorable defenses, and the limited prejudice that the Williamses would have suffered if the trial court had set aside the entry of default, the trial court abused its discretion by refusing to set aside the entry of default. We reverse the default judgment and remand this case for further proceedings.

**CONCLUSION**

¶52. The trial court erred by failing to consider Tucker's two colorable defenses on the merits of the Williamses' claims and the degree of prejudice to the Williamses if the default entry were set aside. Due to Tucker's presentation of strong colorable defenses and the limited prejudice to the Williamses, we hold that the trial court abused its discretion by failing to set aside the default entry. The judgment of the Circuit Court of Hinds County, First Judicial District, is reversed, and this case is remanded for further proceedings.

¶53. **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON, P.J., KING, COLEMAN AND MAXWELL, JJ., CONCUR. RANDOLPH, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY LAMAR AND BEAM, JJ.**

**RANDOLPH, PRESIDING JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶54. While I agree this matter should be reversed and remanded, my analysis would conclude at a finding that the Williamses' claims against Tucker are barred by res judicata, for those claims were compulsory counterclaims that should have been asserted in the federal action filed by Tucker. Fed. R. Civ. P. 13(a). The purpose of Rule 13(a) is to provide complete resolution to all claims between parties that "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim," avoiding unnecessary litigation and expenditure of judicial resources. *Id. See also **Plant v. Blazer Fin. Servs., Inc. of Georgia***, 598 F.2d 1357, 1364 (5th Cir. 1979). This purpose would be frustrated if the courts did not enforce the rules concerning compulsory counterclaims as intended.

**LAMAR AND BEAM, JJ., JOIN THIS OPINION.**