# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01231-COA

**JOHN FREDERICK VANAMAN JR.** **APPELLANT**

**v.**

**AMERICAN PRIDE PROPERTIES, LLC** **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/15/2017 |
| TRIAL JUDGE: | HON. CARTER O. BISE |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | MICHAEL B. HOLLEMAN |
| ATTORNEY FOR APPELLEE: | LEWIE G. "SKIP" NEGROTTO IV |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | REVERSED AND REMANDED - 12/18/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON AND FAIR, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     The Harrison County Chancery Clerk entered a default judgment in favor of American Pride Properties LLC (American Pride), against John Frederick Vanaman Jr. in American Pride's lawsuit to quiet and confirm title to property owned by Vanaman but acquired by American Pride in a tax sale.  Vanaman filed a motion to vacate and set aside the entry of default and default judgment, which the court denied.  Vanaman now appeals, asserting two issues: (1) the court erred in finding that he was properly served with the summons and complaint in American Pride's lawsuit; and (2) the court erred in finding that he failed to satisfy the three-part test set forth in Rule 55(c) of the Mississippi Rules of Civil Procedure

to set aside the default judgment. Because we agree with Vanaman's second argument, we reverse and remand this case to the chancery court for proceedings consistent with this opinion.

FACTS

¶2. In 1984, Vanaman and his mother purchased a parcel of property (referred to throughout this opinion as the "Wortham Road property"). They operated a gas station and grocery store on the Wortham Road property. On October 6, 2001, Vanaman's mother quitclaimed her interest to Vanaman. The quitclaim deed listed Vanaman's mailing address as 20440 Armes Road, Saucier, Mississippi. Vanaman maintains that at the time the quitclaim deed was executed, he was temporarily living in a trailer at the Armes Road address while building a house at 22311 L. Lizana Road, Saucier, Mississippi. Vanaman purports that he moved into the house at L. Lizana Road in late 2006 or early 2007, and that he promptly filed a change of address form with the United States Postal Service to reflect his new address.

¶3. Sometime later, Vanaman fell behind in making his tax payments on the Wortham Road property. The Wortham Road property was sold three times: in 2009 for 2008 taxes, in 2010 for 2009 taxes, and in 2013 for 2012 taxes. Vanaman redeemed his property from the 2009 and 2010 tax sales but not the 2013 tax sale. TLHMS, LLC/RAI bought the property on August 26, 2013, when it was sold for nonpayment of the 2012 taxes.

¶4. On April 8, 2015, a notice of forfeiture mailed to Vanaman at 20440 Armes Road was delivered to that address. A return receipt included in the record bears Vanaman's

2

handwritten signature, and in the space for the signatory's address, the following text is handwritten: 22311 L. Lizana Road.

¶5.     A second notice of forfeiture was mailed to Vanaman at 20440 Armes Road on June 12, 2015, but it was returned not deliverable as addressed. The notice of sale of property for delinquent taxes that was published in the Sun Herald on July 10, 2015, listed the Wortham Road property. It showed that the property was owned by Vanaman and listed his address as 20440 Armes Road. On August 12, 2015, a deputy sheriff of Harrison County attempted to serve Vanaman with notice of the forfeiture at 20440 Armes Road, but was unable to locate him at that address. The deputy sheriff posted notice on the door at that location. On September 28, 2015, the chancery clerk executed an affidavit attesting that a diligent search and inquiry was made in an effort to ascertain Vanaman's address by use of the phone directory, internet directory, land deed records, and Harrison County tax roll, but that Vanaman's address was unable to be ascertained.

¶6.     In October 2015, the chancery clerk conveyed the Wortham Road property to TLHMS, LLC/RAI. TLHMS, LLC/RAI then conveyed the property to American Pride via a quitclaim deed and assignment, dated October 30, 2015, and recorded November 30, 2015.

¶7.     On January 20, 2016, American Pride filed a complaint to quiet and confirm tax title. The record contains a "Proof of Service - Summons" signed by a process server, warranting that Vanaman was served on January 28, 2016. Vanaman failed to answer American Pride's complaint. Therefore, on April 4, 2016, the Harrison County Chancery Court Clerk made an entry of default with respect to American Pride's lawsuit against Vanaman. The clerk's

3

entry of default was twice amended: once on April 8, 2016, and again on May 11, 2016. On May 16, 2016, the court entered a judgment confirming and quieting tax title in American Pride. Vanaman filed a motion to set aside the entry of default and entry of default judgment on November 2, 2016.

¶8. The chancery court conducted a hearing on November 16, 2016, wherein the following conversation took place during direct examination of Vanaman:

> Q. Now, in January of 2016, did a man come to you with some papers?
>
> A. No, sir. Not that I remember.
>
> Q. Did a man serve you with papers?
>
> A. Seems like he did. Somebody gave me some papers. Exactly what - -
>
> Q. Now, with respect to those papers, how many pages was it?
>
> A. Just a few. Five, six maybe.
>
> Q. And from the - - was it - - did it have a lawsuit, the name of a lawsuit on it?
>
> A. No, sir. Not that I'm aware of. I can't truly remember. I honest to God can't remember. It seemed like there was something on there about that.
>
> Q. What did you do with the papers?
>
> A. I took - - I took them to . . . my attorney at the time.

When asked on cross-examination whether he took legal action as a result of being served with the papers in January 2016, Vanaman stated that he took the papers to his lawyer and that he believed taking the papers to his lawyer was sufficient. He added that he was not told that he needed to do anything else.

4

¶9. The court denied Vanaman's motion on February 15, 2017. On February 27, 2017, Vanaman filed a motion to reconsider, alter, amend, or vacate the judgment. The court conducted another hearing on June 20, 2017, and subsequently denied Vanaman's motion on August 2, 2017. Vanaman now appeals.

DISCUSSION

### I. Proper Service

¶10. In his brief on appeal, Vanaman maintains that the chancellor erred in finding that he was properly served with a copy of American Pride's summons and complaint to quiet and confirm tax title in January 2016. Specifically, Vanaman maintains that he was served with three copies of the summons—one for him, one for his deceased mother, and one for his deceased father—but not three copies of the complaint. In support of this argument, Vanaman contends that he was only served with "five or six" pages.

¶11. "With regard to service of process, [appellate courts apply] an abuse-of-discretion standard of review to the trial court's findings of fact." *Long v. Vitkauskas*, 228 So. 3d 302, 304 (¶5) (Miss. 2017). Rule 4 of the Mississippi Rules of Civil Procedure sets forth the requirements for proper service. "If a process server has executed a return properly, there is a presumption that service of process has occurred . . . . However, this presumption that service has been effected is rebuttable through the use of extrinsic evidence, including the testimony of the party who is contesting service." *Collins v. Westbrook*, 184 So. 3d 922, 929 (¶18) (Miss. 2016).

¶12. The record reflects that on January 28, 2016, a process server served a John F.

5

Varaman, Jr. with the summons. The return is captioned "Proof of Service-Summons" for a process server. The word "complaint" is not included in the body of the return and does not state that a complaint was served along with the summons. The acknowledgment, however, refers to both a summons and complaint. Vanaman testified at trial that he was, in fact, served with papers in January 2016. Although he testified that he was only served with "five or six" pages—which would indicate that he was not served with both the summons and complaint if true—we do not find this testimony sufficient to find that the chancery court abused its discretion in finding that Vanaman was served with the summons and complaint. Accordingly, we find no merit to this issue.

*II. Default Judgment*

¶13. Appellate courts review a trial court's decision regarding a motion to set aside a default judgment for abuse of discretion. *Am. States Ins. Co. v. Rogillio*, 10 So. 3d 463, 467 (¶8) (Miss. 2009). "[W]here there is a reasonable doubt as to whether or not a default judgment should be vacated, the doubt should be resolved in favor of opening the judgment and hearing the case on the merits. Nevertheless, [our supreme court] has also stated that [appellate courts should] not reverse unless convinced that the [ruling] [c]ourt has abused its discretion." *Id*. (citations and internal quotation marks omitted).

¶14. In reviewing a motion to set aside a default judgment, the trial court is tasked with making its decision in accordance with Rules 55(c) and 60(b) of the Mississippi Rules of Civil Procedure. In light of these provisions, our supreme court has established a three-prong balancing test to consider when reviewing a trial court's decision to grant or deny a motion

6

to set aside a default judgment:

> (1) the nature and legitimacy of the defendant's reasons for his default, i.e., whether the defendant has good cause for default, (2) whether [the] defendant in fact has a colorable defense to the merits of the claim, and (3) the nature and extent of prejudice which may be suffered by the plaintiff if the default judgment is set aside.

*Rogillio*, 10 So. 3d at 468 (¶10).

### 1. Good Cause

¶15. With respect to the first prong, Vanaman first maintains that he had good cause for default because he never received notice of anything to which a response was necessary. Alternatively, Vanaman maintains that there was good cause for his default due to the fact that his "mental, emotional, and physical health were in shambles," referring to his testimony during the November 16, 2016 hearing that he suffered from PTSD, was going through a divorce, was undergoing a contract dispute with the fuel provider for the gas station his family was operating on the Wortham Road property, had recently been forced to rebuild the gas station grocery store because a car had crashed into it, and other stressors. Vanaman further maintains that he gave the papers he was served with in January 2016 to his lawyer, and he relied on that lawyer to take care of the matter. In response, American Pride argues that Vanaman was properly served and that he did nothing to follow up with his attorney regarding the matter.

¶16. The chancery court found that this factor favored American Pride. While Vanaman undoubtedly suffered a number of personal difficulties during the time that he was served with the papers that he admitted receiving, his failure to follow up with his lawyer is

7

inexplicable. On these facts, we cannot say that the chancellor abused his discretion in so finding.

### 2. Colorable Defense

¶17. With respect to the second prong, Vanaman argues that he has a colorable defense because the chancery clerk did not follow the requirements of Mississippi Code Annotated section 27-43-3 (Rev. 2017) in issuing the notice of forfeiture stemming from the tax sale of the Wortham Road property. Vanaman maintains that he was not properly served with the notice of forfeiture either personally or by certified mail to his usual place of abode, and that publication was not proper. In response, American Pride asserts that Vanaman did not contest the validity of the notice of forfeiture provided by certified mail or by publication. Rather, he only took issue with the personal service provided by the sheriff. With respect to personal service, American Pride maintains that the 20440 Armes Road address was the proper location to serve Vanaman given that it was the address listed on the 2001 quitclaim deed, and that the chancery clerk had no reason to believe that Vanaman's address was anything other than that.

¶18. Of the three prongs of the *Rogillio* balancing test, this one is the most important. *Rogillio*, 10 So. 3d at 470 (¶16). Our supreme court explained the meaning of a "colorable defense" in *Tucker v. Williams*, 198 So. 3d 299, 312 (¶35) (Miss. 2016):

> "Colorable" is defined as appearing to be true, valid, or right. A colorable defense is one that reasonably may be asserted, given the facts of the case and the current law. A defense need not be compelling, be proven to trial standards, or be supported by sworn evidence in order to qualify as a "colorable defense." Rather, the defense must be a reasonable one. Indeed, this Court has held that even a defense of questionable strength may be

8

colorable.

(Citations and internal quotation marks omitted).

¶19. Mississippi Code Annotated section 27-43-1 (Rev. 2017) requires that a chancery court clerk, "within one hundred eighty (180) days and not less than sixty (60) days prior to the expiration of the time of redemption with respect to land sold, either to individuals or to the state . . . issue notice to the record owner of the land sold as of 180 days prior to the expiration of the time of redemption." Section 27-43-3 requires that redemption notice be given by personal service, mail, and publication in an appropriate newspaper:

> The clerk shall issue the notice to the sheriff of the county of the reputed owner's residence, if he is a resident of the State of Mississippi, and the sheriff shall be required to serve notice as follows:
>
> > (a) Upon the reputed owner personally, if he can be found in the county after diligent search and inquiry, by handing him a true copy of the notice;
> >
> > (b) If the reputed owner cannot be found in the county after diligent search and inquiry, then by leaving a true copy of the notice at his usual place of abode with the spouse of the reputed owner or some other person who lives at his usual place of abode above the age of sixteen (16) years, and willing to receive the copy of the notice; or
> >
> > (c) If the reputed owner cannot be found after diligent search and inquiry, and if no person above the age of sixteen (16) years who lives at his usual place of abode can be found at his usual place of abode who is willing to receive the copy of the notice, then by posting a true copy of the notice on a door of the reputed owner's usual place of abode.
>
> The sheriff shall make his return to the chancery clerk issuing the notice. The clerk shall also mail a copy of the notice to the reputed owner at his usual street address, if it can be ascertained after diligent search and inquiry, or to his post-office address if only that can be ascertained, and he shall note such

9

action on the tax sales record.  The clerk shall also be required to publish the name and address of the reputed owner of the property and the legal description of the property in a public newspaper of the county in which the land is located, or if no newspaper is published as such, then in a newspaper having a general circulation in the county.  The publication shall be made at least forty-five (45) days prior to the expiration of the redemption period.

. . . .

Notice by mail shall be by registered or certified mail.  In the event the notice by mail is returned undelivered and the notice as required in this section to be served by the sheriff is returned not found, then the clerk shall make further search and inquiry to ascertain the reputed owner's street and post-office address.  If the reputed owner's street or post-office address is ascertained after the additional search and inquiry, the clerk shall again issue notice as set out in this section.  If notice is again issued and it is again returned not found and if notice by mail is again returned undelivered, then the clerk shall file an affidavit to that effect and shall specify in the affidavit the acts of search and inquiry made by him in an effort to ascertain the reputed owner's street and post-office address and the affidavit shall be retained as a permanent record in the office of the clerk and that action shall be noted on the tax sales record.  If the clerk is still unable to ascertain the reputed owner's street or post-office address after making search and inquiry for the second time, then it shall not be necessary to issue any additional notice but the clerk shall file an affidavit specifying the acts of search and inquiry made by him in an effort to ascertain the reputed owner's street and post-office address and the affidavit shall be retained as a permanent record in the office of the clerk and that action shall be noted on the tax sale record.

. . . .

Should the clerk inadvertently fail to send notice as prescribed in this section, then the sale shall be void and the clerk shall not be liable to the purchaser or owner upon refund of all purchase money paid.

"All three requirements must be met for the redemption notice to be complete and in accordance with the statute." *Cleveland v. Deutche Bank Nat. Tr. Co.*, 207 So. 3d 710, 715 (¶20) (Miss. Ct. App. 2016).  Statutes governing notice of a tax sale are "to be strictly construed in favor of the landowners, and any deviation from the statutorily mandated

10

procedure renders the sale void." *Id*.

¶20.    We disagree with American Pride that Vanaman failed to raise the issue of notice via certified mail or publication. Vanaman argues that his motion to set aside the court's default judgment was erroneously denied; inherent in the analysis of whether a court should have set aside a default judgment is the question of whether the landowner has a colorable defense. As such, this issue is properly before us on appeal.

¶21.    As Vanaman points out, several documents were filed with the chancery clerk's office listing his address as 22311 L. Lizana Road following the execution of the quitclaim deed in 2001, including a certificate of redemption in 2010 and a release from delinquent tax sale in 2012. Despite the filing of these documents with the chancery clerk, the notice of forfeiture executed on April 1, 2015, still listed Vanaman's address as 20440 Armes Road. We further take note of the fact that whoever signed the return receipt on April 8, 2015, after delivery of the notice of forfeiture, actually wrote out a different address—22311 L. Lizana Road—from the address the notice was actually delivered to—20440 Armes Road. It is clear from the record that Vanaman had a colorable defense with respect to whether service was properly effectuated regarding the notice of forfeiture. As stated, this factor is the most significant of the *Rogillio* balancing test; we find that it weighs in favor of Vanaman, and that it merits the default judgment being set aside.

### 3.    Prejudice

¶22.    With respect to the third prong, Vanaman asserts that American Pride would suffer no prejudice if the default judgment was set aside. American Pride, in response, maintains

11

that it has spent over two years litigating this matter and clearing title to the property, and that it should not now be punished because Vanaman intentionally ignored its efforts to contact him.

¶23. While we do not dispute the fact that American Pride has expended considerable time and effort into this matter, that would likely be the case in most, if not all, instances where a motion to set aside a default judgment is being contested. So the prejudice must be something more than the routine cost of litigation. Here, American Pride has offered nothing more. Therefore, given that our law favors hearing matters on their merit and that statutes governing tax sales must be strictly construed in favor of the landowner, we find that if this factor does not favor Vanaman, the most that can be said is that it is neutral. Therefore, we find that the chancellor abused his discretion in not setting aside the default judgment because Vanaman has a colorable defense to American Pride's action to quiet title and confirm title to the Wortham Road property. The colorable defense derives from the fact that the statutory notice scheme, required by section 27-43-1, was not followed. Vanaman was not personally served, and all notices were mailed to, and the attempt at personal service made at, 20440 Armes Road, despite ample notice of record that Vanaman's address was L. Lizana Road. Accordingly, the default judgment is hereby set aside, and the case is remanded to the chancery court.

¶24. In cases where a default judgment is reversed on appeal, our normal procedure would be simply to reverse and remand for further proceedings. However, inasmuch as the record clearly shows that the statutory notice procedure was not followed and our caselaw holds that

12

any deviation from the statutorily mandated procedure renders the sale void, the remand is for the limited purpose of determining, in accordance with the appropriate statutes, the amount owed by Vanaman to redeem his property. Once that amount has been determined and paid by Vanaman, the chancery court shall enter an order voiding the tax deed to American Pride.

¶25. **REVERSED AND REMANDED.**

**LEE, C.J., BARNES, CARLTON, FAIR, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. GRIFFIS, P.J., AND WILSON, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**