# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CT-00601-SCT

*JULIO GORDON*

*v.*

*CHRISTY DICKERSON*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 04/23/2020 |
| TRIAL JUDGE: | HON. PAUL S. FUNDERBURK |
| TRIAL COURT ATTORNEYS: | PHILLIP MATTHEW BLANCHARD, II |
| | JORDAN LEIGH BOLING HUGHES |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PHILLIP MATTHEW BLANCHARD, II |
| ATTORNEYS FOR APPELLEE: | JORDAN LEIGH BOLING HUGHES |
| | DESIREE CAROLE HENSLEY |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | REVERSED AND REMANDED - 09/29/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**BEAM, JUSTICE FOR THE COURT:**

¶1.    The Court of Appeals affirmed the judgment of the Lee County Circuit Court, which had affirmed the judgment of the Lee County County Court denying Julio Gordon's motion to set aside a default judgment. *Gordon v. Dickerson*, No. 2020-CA-00601-COA, 2021 WL 4166102, *10 (Miss. Ct. App. Sept. 14, 2021). We granted Gordon's petition for certiorari to consider the trial courts' interpretation and application of Rule 13(k) of the Mississippi

Rules of Civil Procedure.

¶2.    We find that the rule was misinterpreted and misapplied to the exclusion of Rule 15(a) of the Mississippi Rules of Civil Procedure and that the county court erred by not setting aside the default judgment against Gordon.  Accordingly, we reverse the Court of Appeals' decision, we reverse the judgment of the circuit court, we vacate the judgment of default, and we remand this case to the county court for further proceedings on the merits.

## PROCEDURAL HISTORY

¶3.    In August 2016 in the Lee County Justice Court, Gordon obtained an eviction order and a money judgment for back rent against his tenant Christy Dickerson.  Dickerson appealed to the Lee County County Court in September 2016, providing notice to Gordon under Uniform Civil Rule of Circuit and County Court Practice 5.04.

¶4.    In May 2018, the county clerk sent Dickerson a notice of intent to dismiss the case as stale.  In response, Dickerson filed an "Appellant's Counterclaims"[1] in June 2018, with a certificate of service indicating that a copy of the counterclaims had been sent to Gordon's mailing address.  Gordon filed no response, and Dickerson applied for and received an entry of default in January 2019.  Dickerson then filed a motion for default judgment and a determination of compensatory and punitive damages.  The county court held a hearing on

---

[1]Dickerson asserted breach of contract, fraudulent misrepresentation, trespass, wrongful possession, unjust enrichment, and, alternatively, breach of implied warranty of habitability, breach of implied covenant of quiet enjoyment, and constructive eviction. Dickerson alleged that Gordon failed to make requested repairs that rendered the property uninhabitable, and she sought compensatory and punitive damages.

2

the motion. Both parties appeared at the hearing; Dickerson was represented by counsel, and Gordon appeared pro se.

¶5.    The county court found that Gordon had been served properly with the counterclaims in accordance with Rule 5 of the Mississippi Rules of Civil Procedure, that Rule 4 of the Mississippi Rules of Civil Procedure was inapplicable, and that Gordon had forfeited his right to challenge liability by failing to answer the counterclaims. The county court held a trial to determine if punitive damages should be awarded, after which the county court awarded Dickerson $10,800 in compensatory damages and $39,200 in punitive damages.

¶6.    Gordon, through counsel, timely filed a motion to set aside the default judgment under Rule 60(b) of the Mississippi Rules of Civil Procedure, or, alternatively, for a new trial, along with a requested stay of judgment pending the post-trial motions. The county court granted the stay until a hearing could be held on the motions.

¶7.    Gordon argued at the hearing that he was not required to file a written response to Dickerson's counterclaims pursuant to Mississippi Code Section 11-51-91 (Rev. 2019), which provides in part: "On appeal from a justice of the peace court to the circuit court the case shall be tried anew, in a summary way, without pleadings in writing . . . ." Gordon argued that he appeared on the date scheduled for a hearing and was prepared to try the case on the merits that day. Gordon also argued that Dickerson did not comply with Mississippi Rule of Civil Procedure 13(k)'s requirement that counterclaims be filed within thirty days

3

after the perfection of her appeal from justice court.[2] And she had not been granted leave of the court to file her counterclaims as required by Rule 15.

¶8. Following the hearing, the county court denied Gordon's motions; it lifted the stay and entered its judgment. In its order, the county court said that the Mississippi Rules of Civil Procedure govern appeals taken from justice courts to county courts, and to the extent the rules conflict with certain procedural statutes, it is well established that the rules supersede the statutes. The court said that while Rule 13(k) states that counterclaims should be filed within thirty days of the notice of appeal from justice court, the rule also provides that the court may exercise its discretion to allow filing of counterclaims after the thirty days.

¶9. Gordon appealed to the circuit court, which affirmed the county court's default judgment and damages awards. The circuit court rejected Gordon's argument that Dickerson had to file her counterclaims within thirty days of perfecting her appeal from justice court or seek leave of the court to file them out of time. The circuit court said that

---

[2] Rule 13(k) provides in pertinent part as follows:

**(k) Appealed Actions.** When an action is commenced in the justice court or in any other court which is not subject to these rules and from which an appeal for a trial de novo lies to a court subject to these rules, any counter-claim made compulsory by subdivision (a) of this rule shall be stated as an amendment to the pleading within thirty days after such appeal has been perfected or within such further time as the court may allow; and other counter-claims and cross-claims shall be permitted as in an original jurisdiction action.

M.R.C.P 13(k).

Gordon had read into the rule a provision that does not exist and that the rule instead provides that counterclaims may be filed "within such further time as the court may allow." The circuit court compared subdivision (k) with subdivision (f) of the rule which reads: "When a pleader fails to set up a counter-claim through oversight, inadvertence, or excusable neglect, or when justice requires, he may *by leave of court* set up the counter-claim by amendment on such terms as the court deems just." M.R.C.P. 13(f). The circuit court reasoned that if this Court had intended to require leave of court to pursue counterclaims in appeals from justice court outside Rule 13(k)'s thirty-day window, "it would have so provided, as it did for non-justice court appeals in Rule 13(f)."

¶10. In a plurality opinion with two dissenting opinions, the Court of Appeals affirmed the judgment of the circuit court. *Gordon*, 2021 WL 4166102, at *10. The plurality held that the county court had discretion to allow the counterclaims under Rule 13(k). *Id.* at *3-4. According to the plurality, while Dickerson filed her counterclaims more than thirty days after perfecting her appeal from justice court, as provided by Rule 13(k), the county court nonetheless had discretion to allow the counterclaims under the rule, which also provides, "or within such further time as the court may allow[.]" *Id.* at *4 (emphasis omitted) (quoting M.R.C.P. 13(k)).

¶11. The plurality held that Dickerson was not required to seek leave of the court under Rule 15(a), which requires leave of the court or written consent of the adverse party when a party seeks to amend a pleading more than thirty days after it was served. *Id.* at *5 (citing

5

M.R.C.P. 15). The plurality found Rule 15 inapplicable because Rule 13(k) governed this case, and it contains no such requirement. *Id.* Lastly, the plurality found that the county court did not abuse its discretion by finding Gordon in default for failure to answer the counterclaims and that it did not err by awarding punitive damages. *Id.* at *5-9.

¶12.    Dissenting, Chief Judge Barnes agreed that Dickerson's counterclaims were not time-barred under Rule 13(k). *Id.* at *11 (Barnes, C.J., dissenting). She wrote, however, that the county court erred by denying Gordon's motion to set aside the default judgment because Gordon was not required to file any responsive pleading(s) as would normally be required under Rule 12(a) of the Mississippi Rules of Civil Procedure. *Id.*

¶13.    In his dissenting opinion, Judge Emfinger submitted that because Dickerson did not file her counterclaims within a thirty-day period, Rule 13(k) requires leave of the court before the filing of an amended pleading containing counterclaims. *Id.* at *15-16 (Emfinger, J., dissenting). Judge Emfinger compared this to Rule 15(a) of the Mississippi Rules of Civil Procedure, which states:

> A party may amend a pleading as a matter of course at any time before a responsive pleading is served, or, if a pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within thirty days after it is served . . . . Otherwise a party may amend a pleading only by leave of court or upon written consent of the adverse party.

*Id.* at *15 (alteration in original) (emphasis omitted) (quoting M.R.C.P. 15(a)). "In every other case where the Mississippi Rules of Civil Procedure are applicable, an answer may be amended to assert counterclaims, without leave of the court, within thirty days after service

6

of the answer." *Id.* But "any amendment after the thirty-day period requires leave of court."

*Id.*

¶14. Judge Emfinger wrote that Rule 13(k) was added "to address the problem of moving from a court that is not subject to the Mississippi Rules of Civil Procedure to a court that is subject to the Mississippi Rules of Civil Procedure . . . ." *Id.* As Rule 13(a) provides, "[c]ompulsory counterclaims must be set out in the answer, or the counterclaims may be barred by the doctrines of res judicata or collateral estoppel." *Id.* (citing M.R.C.P. 13(a)). Judge Emfinger continued, since "justice court is not subject to the Mississippi Rules of Civil Procedure and does not require the filing of an answer or other written pleading, Rule 13(k) provides a process for compulsory counterclaims to be raised in the appeal de novo and thereby avoids the procedural bar contained in Rule 13(a)." *Id.* Under Rule 13(k), "the defendant in justice court who was not required to file an answer and/or raise compulsory counterclaims is given thirty days after the appeal is perfected to file an amended answer and assert the compulsory counterclaims therein, without first obtaining leave of court." *Id.* Thereafter, according to Judge Emfinger, "interpreting Rule 13(k) to require leave of court before filing an amended answer containing compulsory counterclaims would be consistent with the requirements of Mississippi Rule of Civil Procedure 15 and achieve the purpose of avoiding the procedural bar found in Rule 13(a)." *Id.* at \*16.

## DISCUSSION

¶15. As Judge Emfinger points out, there is no federal counterpart to Rule 13(k). *Id.* at

7

\*15.   The rule's first and second sentences are essentially identical to Rule 13(j) of the Alabama Rules of Civil Procedure,[3] which is based on former Rule 13(j) of the Vermont Rules of Civil Procedure, which is based on former Rule 13(j) of the Maine Rules of Civil Procedure.[4]  Both Vermont and Maine have since repealed the rule.[5]

¶16.   Rule 13(k) deals with the process of cases "moving from a court that is not subject to

---

[3]Rule 13(k)'s first sentence is identical to the Alabama Rules of Civil Procedure 13(j)'s first sentence.

[4] *See* Ala. R. Civ. P. 13(j) cmt. ("Rule 13(j) has no federal counterpart. The first sentence is based on Vermont Rule 13(j)."); Vt. R. Civ. P. 13(j) cmt. (abrogated 2018) ("Rule 13(j), which is not in the federal rule, is based on Maine Rule 13(j).").

[5] *See* Vt. R. Civ. P. 13(j) cmt. ("Rule 13(j) is abrogated.  Justices' courts were eliminated and their functions transferred to the District Court by Act No. 249 of 1973 (Adj. Sess.)."); Me. R. Civ. P. 13(j) advisory comm. n. ("Rule 13(j) requires that when an action is removed from the District to the Superior Court, permissive counterclaims and cross-claims are permitted as if filed in an original action in the Superior Court and the clerk 'shall forthwith notify all parties of the requirements of this subdivision.' The subdivision is an amended vestige of the days in which compulsory counterclaims were not allowed in the District Court. The subdivision has no purpose in a unified court and imposes a meaningless burden on the clerks.  Under current practice, when an action is removed to the Superior Court, the entire action is removed, including counterclaims and cross-claims."). Prior to the Maine Rules of Civil Procedure 13(j) repeal, the advisory committee notes to the rule provided as follows:

> Rule 13(j) is not in the federal rule.  It deals with compulsory counterclaims in actions appealed or removed from a municipal court or trial justice. There is no requirement for such counterclaims in the lower courts because such a large portion of the defendants appear without counsel that a compulsory counterclaim rule might cause undue hardship.  When such an action reaches the Superior Court, however, Rule 13(a) becomes applicable and a counterclaim compulsory under that subdivision must be asserted by amendment to the answer.  As a further precaution in such cases, the rule provides that upon entry of such an action in the Superior Court the clerk shall notify the parties of this requirement.

the Mississippi Rules of Civil Procedure to a court that is subject to the rules . . . ." ***Gordon***, 2021 WL 4166102, at \*15. The intent behind the rule is to integrate such cases with Rule 13's other provisions—primarily Rule 13(a), which governs compulsory counterclaims.

¶17. As Judge Emfinger also points out, there is no requirement that a defendant file an answer to a plaintiff's complaint in justice court. ***Gordon***, 2021 WL 4166102, at \*15. Nor is there a requirement that a defendant file a counterclaim to the plaintiff's claim in justice court.[6] Rule 13(k) contemplates the latter.

¶18. When a case is appealed from justice court to either county or circuit court for a trial de novo, the appeal proceeds "as if a complaint and answer had been filed[.]" UCRCCC 5.07. The county or circuit court can require supplemental pleadings to clarify the issues, and all subsequent proceedings are "governed by the Mississippi Rules of Civil Procedure, where applicable, the Mississippi Rules of Evidence, and [the Uniform Civil Rules of Circuit and County Court Practice] . . . ." UCRCCC 5.07.

¶19. For purposes of Rule 13(k), when such a case reaches the county or circuit court, Rule 13(a) becomes applicable, and a counterclaim compulsory under that subdivision must be asserted or it "may be barred by the doctrines of res judicata or collateral estoppel." ***Gordon***, 2021 WL 4166102, at \*16 (citing M.R.C.P. 13(a)). Rule 13(k) instructs that a compulsory counterclaim "shall be stated as an amendment to the pleading within thirty days after such

---

[6] Rule 16 of the Uniform Rules of Procedure for Justice Court provides that while "[c]ounterclaims and setoffs shall be liberally allowed in [justice] court[, f]ailure to assert any counterclaim or setoff shall not bar a subsequent civil action of those claims."

9

appeal has been perfected or within such further time as the court may allow[.]" M.R.C.P. 13(k).

¶20. Here, there was no written pleading (i.e., an answer) to amend since Dickerson did not (nor was she required to) file one in justice court, and she was not required to initiate a written pleading in county court by virtue of Rule 5.07. Effectively, Dickerson's perfected appeal operated as her pleading. This, procedurally speaking, is the only distinguishing feature between cases originating in county or circuit court and those transferring from justice court for trial de novo in county or circuit court. Because, once again, all proceedings thereafter "will be governed by the Mississippi Rules of Civil Procedure, where applicable, the Mississippi Rules of Evidence, and [the UCRCCC] . . . ." UCRCCC 5.07.

¶21. Rule 15(a) governs amendments to pleadings in general. It states in pertinent part:

> A party may amend a pleading as a matter of course at any time before a responsive pleading is served, or, if a pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within thirty days after it is served . . . . Otherwise a party may amend a pleading only by leave of court or upon written consent of the adverse party; leave shall be freely given when justice so requires.

M.R.C.P. 15(a).

¶22. This Court has noted with approval the following interpretation of Rule 15(a) of the Federal Rules of Civil Procedure:

> In general, if an amendment that cannot be made as of right is served without obtaining the court's leave or the opposing party's consent, it is without legal effect and any new matter which it contains will not be considered unless the amendment is resubmitted for the court's approval. However, some courts

10

have held that an untimely amended pleading served without judicial permission may be considered as properly introduced when leave to amend would have been granted had it been sought *and when it does not appear that any of the parties will be prejudiced by allowing the change*.

***Haygood v. First Nat'l Bank of New Albany***, 517 So. 2d 553, 557 (Miss. 1987) (emphasis added) (quoting 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1484); *see also* ***Hester v. Bandy***, 627 So. 2d 833, 839 (Miss. 1993) ("While a trial court has discretion to allow amendment and should do so freely under the proper circumstances, amendment should not occur when to do so would prejudice the defendant."); ***D.P. Holmes Trucking, LLC v. Butler***, 94 So. 3d 248, 255 (Miss. 2012) ("If a party fails to seek leave of the court or permission of the opposing party prior to amending the pleadings, such amendment is improper and will be struck.").

¶23.    Rule 13(k) clearly contemplates Rule 15(a)'s amendment requirements based on the language that "any counter-claim made compulsory by subdivision (a) of this rule *shall be stated as an amendment to the pleading* . . . ."  M.R.C.P. 13(k) (emphasis added). Dickerson's "Appellant's Counterclaims" filing makes no such statement.

¶24.    Dickerson's brief on appeal implies that she did not have to do so because her "independent claims" against Gordon "were not compulsory."  She argues that she had the discretion to limit the subject matter of her appeal from justice court to overturning the "erroneous money judgment" entered against her in justice court.  And she also had the discretion to assert her independent claims against Gordon in a separate proceeding as long as she did so within the statute of limitations.  But she chose to file her claims in the de novo

11

appeal to county court.

¶25. We decline to say whether Dickerson's claims for relief constitute either compulsory or permissive counterclaims under the circumstances and the procedural posture of this case.

¶26. First, irrespective of how the trial courts interpreted Rule 13(k) in this case, Dickerson appears to concede in her brief that Rule 15(a)'s amendment requirements would apply to compulsory counterclaims asserted outside the thirty-day window prescribed by both rules. But she suggests that Rule 15(a)'s requirements would not apply to permissive counterclaims for purposes of Rule 13(k), given its language that "other counter-claims and cross-claims shall be permitted as in an original jurisdiction action."

¶27. This is an overreading of Rule 13(k). Subdivision (k) inherently recognizes the different nature between compulsory and permissive counterclaims. Under Rule 13 in general, any claim that is not compulsory is permissive. M.R.C.P. 13(a), (b). A permissive counterclaim is one that does not arise "out of the transaction or occurrence that is the subject matter of the opposing party's claim." M.R.C.P. 13(b).

> In contrast to a compulsory counterclaim, a permissive counterclaim may, but
> need not, be stated. The claimant has the option of whether or not to plead a
> permissive counterclaim, and the failure to do so does not render the judgment
> in the case res judicata, or preclude asserting the permissive counterclaim in
> a subsequent action.

20 Am. Jur. 2d *Counterclaim, Recoupment & Setoff* § 108, Westlaw (database updated May 20, 2022). Rule 13(k) is thus written accordingly.

¶28. Even if we were to assume that Dickerson's counterclaims each constituted a

12

permissive counterclaim, by her own admission she elected to bring them as part of the de novo appeal to county court and not in a new suit. Having done so, we find that Dickerson was required to set up her counterclaims (whether compulsory or permissive) by amendment to her pleading.[7]

¶29.   This is consistent with Rule 13(f), which states, "[w]hen a pleader fails to set up a counter-claim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counter-claim by amendment on such terms as the court deems just." M.R.C.P. 13(f). Rule 13(f) makes no distinction between compulsory counterclaims and permissive counterclaims for amendment purposes, nor does Rule 13(k).[8]

¶30.   The second reason we decline to say whether Dickerson's claims for relief constitute either compulsory or permissive counterclaims is due to Gordon's own procedural failure in this case. Because Dickerson failed to comply with Rule 15(a)'s amendment requirements by not seeking permission from the court or written consent from Gordon before filing her counterclaims, her filing had no legal effect. And Gordon was not required to file a written

---

[7] Dickerson also seems to argue that she had the option of interposing her counterclaims in a stand alone pleading, which Judge Emfinger responded would violate Rule 7(a) of Mississippi Rules of Civil Procedure. *Gordon*, 2021 WL 4166102, at *14. We find it unnecessary to address this view given the circumstances and procedural posture of this case. Our concern in this matter is with the interpretation of Rule 13(k).

[8] Federal Rule of Civil Procedure 13(f) has been repealed. "The 2009 amendments abrogated Rule 13(f) based on the view that the rule was redundant with Rule 15(a), and now an amendment to add a counterclaim is governed by Rule 15." *Digit. Ally, Inc. v. DragonEye Tech., LLC*, No. 13-CV-2290 CM/TJJ, 2014 WL 2865592, at *3 (D. Kan. June 24, 2014).

response to it.

¶31.    What Gordon should have done, however, was file a motion to strike the counterclaims.  Because he failed to do so, all that can be said is that he waived any objection to the procedural posture of Dickerson's counterclaims.  This, though, did not constitute any sort of admission by Gordon to Dickerson's counterclaims in this instance.

¶32.    According to the county court proceedings, Gordon appeared pro se at the scheduled hearing for Dickerson's motion for default judgment.  The county court told Gordon at the start of the hearing that "you are in default.  The clerk of this court has already entered a default against you."   The county court then stated,

> What that means is, you are precluded procedurally at this point in time from basically disputing liability in this case.  In other words, what we're here on today is to determine what amount, if any amount, of damages to award Ms. Dickerson.
>
> She hasn't really got to prove that you're liable as far as the liability phase of this cause of action goes for what she's asserted.  By not responding, you've admitted that.
>
> That might have been intentional on your part, or that might have been unintentional on your part.  I don't know.  It's really beside the point right now.
>
> But, basically, the default takes care of your complaint, and all that is before this [c]ourt is the countercomplaint of Ms. Dickerson.

¶33.    Following the hearing, the county court issued an order and judgment in which the court held that "Gordon's failure to respond to any of the aforementioned pleadings, motions, and notices, was without good cause" and that the clerk's entry of default was proper.  It was

14

not until the county court issued its final order after hearing Gordon's timely motion to set aside the default judgment that it ruled it would have granted Dickerson's motion to amend, had she filed one, based upon the discretion Rule 13(k) provides. The county court did not address Rule 15(a), which counsel for Gordon submitted in his motion to set aside the default judgment and argued at the hearing was not complied with.

¶34. But Gordon was not in default for purposes of Rule 55 of the Mississippi Rules of Civil Procedure at the time of the hearing because he was not required to file a written response to Dickerson's counterclaims, which were submitted in violation of Rule 15(a). The county court ruled otherwise because it read Rule 13(k) to the exclusion of Rule 15(a).

¶35. For reasons just explained, this was error and was prejudicial to Gordon. Upon being apprised of Rule 15(a), the county court should have set aside the default judgment and allowed the parties to proceed on the merits of Gordon's claim and Dickerson's counterclaims.

¶36. Presiding Justice King acknowledges that Gordon was not required to file a responsive pleading to Dickerson's counterclaims. But noting *MS Credit Center, Inc. v. Horton*, 926 So. 2d 180 (Miss. 2006), Presiding Justice King would find that Gordon waived any defenses to the entry of default by appearing at the hearing and not asserting any defenses to Dickerson's counterclaims.

¶37. Respectfully, this case does not present a *Horton* issue. *Horton* held that "[a] defendant's failure to timely and reasonably raise and pursue the enforcement of any

15

affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, *coupled with active participation in the litigation process*, will ordinarily serve as a waiver." **Id.** at 180 (emphasis added) (footnote omitted).

¶38. Gordon was held in default for what the county court found was nonparticipation in the litigation process. According to the county court, Gordon "refus[ed] to participate in the Appeal" from justice court by not filing a written reply to Dickerson's counterclaims and by "not rais[ing] issue of the untimely filing" of her counterclaims until his motion to set aside the default judgment.

¶39. Again, Gordon was not required to file a written reply to Dickerson's counterclaims because they were in fact untimely filed without leave of court or Gordon's written consent. M.R.C.P. 15(a). While Gordon should have raised the issue earlier in the county court, he nonetheless raised it in a timely motion to set aside the default judgment under Rule 60(b). Further, given the county court's interpretation and application of Rule 13(k) in this instance, we think it unlikely that the result would have been any different had Gordon raised the issue at the Rule 55 hearing.

¶40. Lastly, contrary to Chief Justice Randolph's dissent, we do not find that a proper trial was had on the merits simply because a damages hearing was conducted.

¶41. Because Gordon was held in default, Dickerson did not have to prove her counterclaims against Gordon. Dickerson did not testify at the damages hearing, and the only evidence submitted in support of her damages claims were pictures of the rental property and

16

her counterclaims' affidavit.

¶42.    Gordon made repeated assertions at the hearing that Dickerson was responsible for much of the damage shown by the pictures she submitted.[9]  And according to the transcript, counsel for Dickerson admitted during the hearing that there were "some sanitary issues on the part of Ms. Dickerson" regarding the condition of the property, but claimed that Gordon was responsible for other issues.

¶43.    Mississippi's Residential Landlord and Tenant Act (RLTA) provides certain duties for both landlord and tenant during the tenancy.  *See* Miss. Code Ann. §§ 89-8-23, -25 (Rev. 2021).  Section 89-8-23, which Dickerson relied upon in support of her counterclaims, provides that "[n]o duty on the part of the landlord shall arise under this section in connection with a defect which is caused by the deliberate or negligent act of the tenant or persons on the premises with the tenant's permission."  Miss. Code Ann. § 89-8-23(2) (Rev. 2021).

¶44.    The county court rejected Gordon's defensive claims out of hand given the "procedural posture of the case[,]" telling Gordon again at the end of the hearing: "You have already got yourself in a position of default in this case.  And, you know, the merits of the case, as far as the liability aspects of the case go, you sort of backed yourself into a corner

_____

    [9] Gordon claimed that Dickerson added on to the laundry room without his permission and that by doing so she installed a metal roof improperly, which caused water to damage the room.  Gordon also claimed that Dickerson caused the kitchen sink to become clogged with grease and that, to alleviate the problem, Dickerson removed the sink's "S-trap" pipe and placed a five gallon bucket under the sink, which then overflowed and damaged the floor.

where it's - - you know, it's too late [to] fight that aspect of the case."

¶45. Later, when Gordon sought to have the default judgment set aside, the county court essentially found that Gordon failed to present any colorable defense to Dickerson's claims, to which the Court of Appeals plurality agreed on review. *See Gordon*, 2021 WL 4166102, at *10 (finding any colorable defense by Gordon "lack[ing]" in its assessment of the case).

¶46. Based on our review of the record, Gordon did in fact assert a number of colorable defenses to the merits of Dickerson's claim under the RLTA, which if believed by the trier of fact, could defeat those claims.

¶47. As we explained in *Tucker v. Williams*, 198 So. 3d 299, 312 (Miss. 2016),

> "'Colorable' is defined as '*appearing* to be true, valid, or right'" *Woodruff* [*v. Thames*], 143 So. 3d [546,] 553 [Miss. 2014] (quoting Black's Law Dictionary 282 (8th ed. 2004) (emphasis added)). A colorable defense is one that reasonably may be asserted, given the facts of the case and the current law. *Woodruff*, 143 So. 3d at 553. A defense need not be compelling, be proven to trial standards, or be supported by sworn evidence in order to qualify as a "colorable defense." *Id.* Rather, the defense must be a reasonable one. *Id.* "Indeed, this Court has held that even a defense of 'questionable' strength may be colorable." *Id.* (citing [*American States Ins. Co. v.*] *Rogillio*, 10 So. 3d [463,] 471 [Miss. 2009].

¶48. Further, we have "encouraged our trial courts to vacate default judgments where the defendant has shown that he has a meritorious defense on the merits." *Tucker*, 198 So. 3d at 312 (internal quotation marks omitted) (quoting *Bailey v. Georgia Cotton Goods Co.*, 543 So. 2d 180, 182 (Miss. 1989)).

¶49. We reiterate that default judgments are not favored in Mississippi—as our judicial policy "favor[s] disposition of cases on their merits." *Wheat v. Eakin*, 491 So. 2d 523, 526

18

(Miss. 1986) (citing ***Bell v. City of Bay St. Louis***, 467 So. 2d 657 (Miss. 1985); ***Manning***

***v. Lovett***, 228 Miss. 191, 87 So. 2d 494 (1956)). "Courts are instituted primarily for the

purpose of determining disputes and controversies between litigants upon the merits of the

case, and much liberality should be allowed toward that end." ***Sw. Surety Ins. Co. v.***

***Treadway***, 113 Miss. 189, 74 So. 143, 145 (1917).

¶50.    At the same time, the rules governing the practice and procedure in our courts are

important and must be abided by and enforced "in order to bring about efficient and prompt

administration of justice[.]" ***Manning***, 87 So. 2d at 496 (quoting ***Treadway***, 74 So. at 145).

When a litigant (whether represented by counsel or proceeding pro se) violates the rules "in

failing to appear and defend at the proper time when duly summoned, there should be proper

and reasonable punishment for such negligence on the part of the litigant." ***Id.*** (quoting

***Treadway***, 74 So. at 145). But, "[w]here there is a reasonable doubt as to whether or not a

default judgment should be vacated, the doubt should be resolved in favor of opening the

judgment and hearing the case on the its merits." ***Id.*** (quoting ***Treadway***, 74 So. at 145); *see*

*also* ***Tucker***, 198 So. 3d at 309 ("[D]ue to the importance of affording litigants a trial on the

merits, 'any error made by a trial judge should be in the direction of setting aside a default

judgment and proceeding with trial.'" (quoting ***Allstate Ins. Co. v. Green***, 794 So. 2d 170,

174 (Miss. 2001))).

¶51.    Whether or not to vacate an entry of default or set aside a default judgment necessarily

lies within the trial court's sound discretion under "the strictures of Rules 55(c) and 60(b),

19

along with the criteria set forth by this Court." ***Tucker***, 198 So. 3d at 309 (citing ***Guar. Nat'l***

***Ins. Co. v. Pittman***, 501 So. 2d 377, 388 (Miss. 1987)). And this Court will not disturb the

trial court's decision absent abuse of discretion. ***Id.***

¶52. But "discretion imports a decision by reference to legally valid standards." ***Bell***, 467

So. 2d at 661. When the trial court's decision is based on an error of law, this Court is

empowered to take corrective action on appeal. ***Id.*** (citing ***City of Meridian v. Trussell***, 52

Miss. 711, 713 (1876)).

## CONCLUSION

¶53. We reverse the Court of Appeals' decision, we reverse the judgment of the circuit

court, we vacate the judgment of default, and we remand this case to the county court for

further proceedings.

¶54. **REVERSED AND REMANDED.**

**COLEMAN, MAXWELL, CHAMBERLIN AND GRIFFIS, JJ., CONCUR. RANDOLPH, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J., AND ISHEE, J. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.**

**RANDOLPH, CHIEF JUSTICE, DISSENTING:**

¶55. One-half of the ten judges on the Court of Appeals found that neither the county court

nor the circuit court abused their discretion. Thus, the evenly divided Court of Appeals'

decision resulted in the proper outcome, an affirmance of the decision of the circuit court.

¶56. The United States Supreme Court has held that

it is obvious that that which has been done must stand unless reversed by the

20

affirmative action of a majority. It has therefore been the invariable practice to affirm, *without opinion*, any judgment or decree which is not decided to be erroneous by a majority of the court sitting in the cause.

*Hertz v. Woodman*, 218 U.S. 205, 212-13, 30 S. Ct. 621, 622, 54 L. Ed. 1001 (1910) (emphasis added). This result was first dictated by Chief Justice Marshall for the United States Supreme Court in 1826:

> No attempt will be made to analyze them, or to decide on their application to the case before us, because the Judges are divided respecting it. Consequently, the principles of law which have been argued cannot be settled; but the judgment is affirmed, the Court being divided in opinion upon it.

*Etting v. Bank of the U.S.*, 24 U.S. 59, 78, 6 L. Ed. 419 (1826). This Court has also recognized the necessity of issuing an order, instead of an opinion, when it is evenly divided. *See Sharkey Issaquena Cmty. Hosp. v. Anderson*, 248 So. 3d 822 (Miss. 2018) (mem.); *Jordan v. State*, 212 So. 3d 817 (Miss. 2016); *Beecham v. State*, 108 So. 3d 394 (Miss. 2012); *see also Wise v. Valley Bank*, 861 So. 2d 1029, 1032-33 (Miss. 2003) ("We hold that when this Court is evenly divided, the order or judgment of the court from which the appeal is taken must be affirmed.").

¶57. On certiorari, this Court is being asked to consider whether a final judgment, not a default judgment, and order dated April 22, 2019, by a county court judge and later affirmed by an experienced circuit court judge on April 23, 2020, should stand. Both judges found the judgment to be valid and declined to set it aside. I discern no error by either and would affirm their informed decisions. Neither abused their discretion.

¶58. Gordon commenced eviction proceedings against Dickerson in the Lee County Justice

Court. The justice court granted the eviction and a money judgment against Dickerson for $914 in back rent and court costs. Subsequently, Dickerson appealed to the county court. After being noticed with the clerk's intent to dismiss stale cases, Dickerson filed counterclaims for breach of contract, fraudulent misrepresentation, trespass, wrongful possession, unjust enrichment, and, alternatively, for breach of the implied warranty of habitability, breach of the implied covenant of quiet enjoyment, and constructive eviction. The clerk accepted this filing as sufficient action to avoid dismissal. Dickerson served the counterclaims on Gordon by mail, as evidenced by a certificate of service and as confirmed by the county court judge. Seven months later, and with no reply filed by Gordon, Dickerson applied to the clerk for an entry of default, again providing notice to Gordon. An entry of default was entered on the docket by the clerk. At no point in these proceedings did Gordon make any attempt to show good cause as to why the entry of default should be set aside. *See* Miss. R. Civ. P. 55(c).

¶59.    Approximately six weeks later, Dickerson filed a motion for default judgment, requesting a monetary judgment be entered in her favor, and a notice of hearing, which indicated the motion would be heard on a date certain. Gordon was properly served with a copy of the motion and notice of hearing. Although Gordon filed no response or objection to either the motion or notice of hearing, Gordon did attend the hearing.

¶60.    At the hearing, Dickerson was represented by counsel; Gordon appeared pro se. The county court judge found that Gordon had been properly served with all pleadings because

22

he was in possession of all the filings, having brought them with him along with other documents and pictures to present to the county court. In addition to tendering documents, Gordon testified and questioned witnesses.

¶61.    Our law is clear that a court cannot be held in error for failing to rule on a matter not presented. *Mills v. Nichols*, 467 So. 2d 924, 931 (Miss. 1985) ("The well-recognized rule is that a trial court will not be put in error on appeal for a matter not presented to it for decision." (citing *Nat. Father v. United Methodist Child.'s Home*, 418 So. 2d 807, 809 (Miss. 1982); *Mabry v. Winding*, 229 Miss. 88, 96, 90 So. 2d 175 (1956))). Contrary to Gordon's argument that a trial on the merits was not conducted, the county court judge, before entering judgment on the pending motion for a default judgment, did hold a trial. Neither before nor during the trial did Gordon argue that he had a meritorious defense or that the **entry of default** should be vacated. Gordon's claim of a meritorious defense was not presented until after the trial concluded and the final **judgment and order** were entered. Gordon first argued that he had a meritorious defense in his motion to set aside the "default" judgment by an attorney that Gordon subsequently had retained.

¶62.    Before the trial court considered punitive damages, the trial judge had received Dickerson's affidavit of damages and Gordon's denial that he had caused those damages. Thus, evidence had been offered by Gordon to mitigate damages. Gordon testified that he should not have to pay any damages because the damages were of Dickerson's own making, but he did not offer any evidence that the monetary amount of damages was inaccurate.

23

¶63.    Each party had the opportunity to put on proof, testify, and question witnesses during the trial. Gordon now argues that the county court judge did not consider his side of the story. The record is clear that the county court not only rejected Gordon's side of the story but also all his efforts to mitigate damages. Had Gordon's evidence been accepted, the county court could have exercised its discretion and awarded nothing to Dickerson. But the county court judge, acting as the finder of fact, found in favor of Dickerson and awarded her not only actual but punitive damages because the trial judge considered Gordon's conduct to be egregious.

¶64.    After the county court considered all of the evidence presented, it awarded Dickerson $10,800 in compensatory damages for rent paid during the time the house was uninhabitable. The court also found by clear and convincing evidence that "the conduct of the defendant was such that it does rise to a level of willful, wanton, intentional, reckless conduct that would warrant punitive damages," and it awarded Dickerson $39,200 in punitive damages.

¶65.    During the hearing and in its order, the county court explicitly held that it permitted additional time for Dickerson to file counterclaims. Numerous times, the county court confirmed that Gordon was properly served with all filings and, in fact, received copies of all filings. Moreover, the county court acknowledged countless times that Gordon had chosen to appear pro se and did not retain an attorney until after the county court's judgment was entered.

> I think the main reason that [Gordon] didn't do what was required under
> the rules is because he chose to proceed without an attorney, but folks who

24

choose to proceed without an attorney are still held to the same standards that attorneys are as far as compliance with the rules go.

There is no -- the Court can't find there is any excusable neglect here. I believe he just chose to ignore the things were mailed to him. And he was mailed an application for an entry of default that -- and a copy of the affidavits for default that clearly indicated he had not complied with the rules. He didn't file a countercomplaint.

Again, he took no action. I don't know why he took no action, but he's not really offered any excuses as to why he took no action. But like I said, it may just go back to him not having an attorney.

¶66. An **Order and Judgment** was entered in favor of Dickerson for $50,000. This was not a default judgment because a trial was conducted prior to the entry of any monetary judgment. After the judgment was entered, Gordon obtained counsel and filed a motion to set aside the judgment, which was incorrectly styled a "motion to set aside default judgment." He alternatively requested that the judgment be reconsidered or for a new trial.

¶67. To set aside a judgment under Mississippi Rule of Civil Procedure 60(b), Gordon was required to show either

(1) fraud, misrepresentation, or other misconduct of an adverse party;

(2) accident or mistake;

(3) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; [or]

(6) any other reason justifying relief from the judgment.

Miss. R. Civ. P. 60(b). Gordon argued that Dickerson's counterclaims were not proper and that he was not properly served. The county court denied the motion, finding that service of the counterclaims was proper under Mississippi Rule of Civil Procedure 5, that service under Mississippi Rule of Civil Procedure 4 was not required, that Gordon had received notice of all the filings, and that the counterclaims were not untimely. The court reiterated that punitive damages had been proved by clear and convincing evidence and that evidence of Gordon's net worth was not presented during the hearing and therefore it did not have to be considered. Gordon appealed.

¶68.    On appeal to the circuit court, the circuit court judge reviewed, *inter alia*, whether Dickerson's counterclaims were timely. The circuit court held that Mississippi Rule of Civil Procedure 13(k) does not require a party filing counterclaims to "seek leave of court or obtain a court order before filing counterclaims outside the thirty-day window." The circuit court recognized that Rule 13(k) provided that courts could allow the filing of counterclaims outside of thirty days after the appeal was filed. Rule 13(k), which specifically addresses appeals from justice court, reads in pertinent part:

> When an action is commenced in the justice court or in any other court which is not subject to these rules and from which an appeal for a trial de novo lies to a court subject to these rules, any counter-claim made compulsory by subdivision (a) of this rule shall be stated as an amendment to the pleading within thirty days after such appeal has been perfected *or within such further time as the court may allow*; and other counter-claims and cross-claims shall be permitted as in an original jurisdiction action.

Miss. R. Civ. P. 13(k) (emphasis added). The county court specifically held that it allowed the counterclaims to be filed. As the circuit court found, I discern no abuse of discretion by the county court.

¶69.    This Court has held that "[t]he purpose of a counterclaim pursuant to [Mississippi Rule of Civil Procedure] 13 is to grant the court broad discretion to allow claims to be joined for the resolution of all controversies between the parties in one suit and to eliminate the inordinate expense occasioned by multiple litigation." ***Hearn v. Autumn Woods Off. Park Prop. Owners Ass'n***, 757 So. 2d 155, 163 (Miss. 1999) (citing Miss. R. Civ. P. 13 cmt.; ***Magee v. Griffin***, 345 So. 2d 1027, 1032 (Miss. 1977)). "Otherwise, to dismiss a counterclaim is tantamount to the dismissal of any other action." ***Id.*** Dickerson's counterclaims were specifically  related to the eviction action, including breach of the implied warranty of habitability, trespass, and unjust enrichment. Accordingly, it was within the trial court's discretion to allow Dickerson to file a counterclaim against the landlord in the same action. Refusal to allow Dickerson to proceed would have thwarted Rule 13's stated purpose "to eliminate the inordinate expense occasioned by circuity of action and multiple litigation." Miss. R. Civ. P. 13 advisory comm. n.

¶70.    As the circuit court properly held, Rule 13, which directly applies to today's case, does not require leave of court when appealing from justice court. An attempt to compel the application of a separate rule, whether it be Rule 13(f) or 15(a), which are not directed to an appeal from justice court, is not appropriate when existing rules apply.  As the trial court

found, "Gordon reads into [Rule 13(k)] a provision that does not exist." The trial court considered and rejected these very same arguments and expressly found Rule 13(k) applied and was properly followed.

¶71. We have long held that "[t]rial courts have inherent authority and duty to control their dockets for the orderly disposal of business." *Harris v. Fort Worth Steel & Mach. Co.*, 440 So. 2d 294, 296 (Miss. 1983). Given the careful attention to this issue by both the county court and circuit court, the language of Rule 13(k), and our longstanding precedent, I discern no abuse of discretion. "This Court reviews a trial court's decision regarding a motion to set aside a default judgment for an abuse of discretion[,]" *Am. States Ins. Co. v. Rogillio*, 10 So. 3d 463, 467 (Miss. 2009), and "will not reverse unless convinced that the Circuit Court has abused its discretion . . . ." *H & W Transfer & Cartage Serv., Inc. v. Griffin*, 511 So. 2d 895, 899 (Miss. 1987). Because neither the county court nor the circuit court abused its discretion by denying Gordon's motion to set aside the default judgment, I would affirm.

**KITCHENS, P.J., AND ISHEE, J., JOIN THIS OPINION.**

**KING, PRESIDING JUSTICE, DISSENTING:**

¶72. Because I would find that Julio Gordon waived any defense to the entry of default by not asserting his arguments at his first opportunity to do so, I respectfully dissent.

¶73. After Gordon obtained an eviction order and money judgment for back rent against Dickerson in the Lee County Justice Court, Dickerson appealed to the Lee County County Court. Dickerson filed her counterclaims in June 2018 and attached a certificate of service

28

indicating that the counterclaims had been sent to Gordon's mailing address. Gordon failed to respond to Dickerson's appeal and counterclaims; therefore, Dickerson filed an application for entry of default. A certificate of service of the application for entry of default was mailed to Gordon. The county clerk subsequently entered a notice of default judgment.

¶74. Dickerson then filed a motion for default judgment and a notice to set a hearing date. Gordon filed no response before the hearing but appeared at the hearing pro se. I would find that, at this point, Gordon was required to assert his defenses to the entry of default. But Gordon did not assert any defenses to the entry of default at the hearing. Instead, following the hearing, Gordon filed a motion to set aside the default judgment. At the hearing on the motion to set aside the default judgment, Gordon was represented by counsel who asserted numerous defenses to the entry of default. Counsel for Dickerson argued that Gordon had the opportunity to defend the motion for default at the previous hearing and could have obtained counsel for the previous hearing but Gordon failed to do so. As Dickerson's counsel stated, the opportunity to present Gordon's defenses to Dickerson's claims was at the hearing for the motion for default judgment. Additionally, as the county court noted, Gordon had the opportunity to file a motion to strike Dickerson's filing of the counterclaims but did not do so.

> Under Mississippi Rule of Civil Procedure 12(b),
>
> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counter-claim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto, if one is required. . . . If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive

29

pleading, he may assert at the trial any defense in law or fact to that claim for relief.

M.R.C.P. 12(b). Although Gordon was not required to file a responsive pleading to Dickerson's counterclaims, he was required to assert his defenses at the first opportunity. "A defendant's failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver." *MS Credit Center, Inc. v. Horton*, 926 So. 2d 167, 180 (Miss. 2006). Because Gordon appeared at the hearing for entry of default and failed to assert any defenses to Dickerson's counterclaims, I would find that Gordon waived any defenses to the entry of default. Therefore, I respectfully dissent.

**KITCHENS, P.J., JOINS THIS OPINION.**